Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396
*Additional Counsel on Signature Page*
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RAUL MORALES, ROBINSON BERTRAND, and ROSALIE QUINONES, individually, and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

TOYOTA MOTOR SALES, U.S.A., INC., a California corporation, TOYOTA MOTOR NORTH AMERICA, INC., a California corporation, and TOYOTA MOTOR CORPORATION, a Japanese corporation,

Defendants.

Case No.:

**CLASS ACTION COMPLAINT FOR:**

(1) Violations of California's Consumers Legal Remedies Act
(2) Viol. of Unfair Competition Law
(3) Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act
(4) Breach of Express Warranty under California Law
(5) Breach of Written Warranty under the Magnuson-Moss Warranty Act
(6) Breach of Implied Warranty under the Magnuson-Moss Warranty Act
(7) Violation of the Uniform Deceptive Trade Practices Act Ga. Code Ann. § 10-1-370, *et seq.*
(8) Breach of the Implied Warranty of Merchantability. Ga. Code. Ann. §§ 11-2-314 and 11-2A-212
(9) Breach of Express Warranty Ga. Code. Ann. §§ 11-2-313 and 11-2A-210
(10) Violation of New York General Business Law §§ 349, 350, et seq.
(11) Breach of Implied Warranty under New York law
(12) Breach of Express Warranty under New York law
(13) Unjust Enrichment

**DEMAND FOR JURY TRIAL**

1. Plaintiffs Raul Morales, Robinson Bertrand, and Rosalie Quinones, ("Plaintiffs") bring this action for themselves and on behalf of all persons ("Class Members") in the United States, and in the alternative on behalf of all persons in the states of California, Georgia and New York, who purchased or leased any of the following vehicles:

- 2018 to present Toyota Highlander
- 2018 to present Toyota Sienna
- 2018 to present Toyota Avalon
- 2018 to present Lexus ES 350
- 2018 to present Lexus RX 350
- 2018 to present Lexus GS 350

("Class Vehicles").

2. Defendants Toyota Motor Sales, U.S.A., Inc., ("TMS,") Toyota Motor North America, Inc. ("TMNA,") and Toyota Motor Corporation ("TMC") (collectively, "Toyota" or "Defendants") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced the Class Vehicles. Plaintiffs allege as follows:

## INTRODUCTION

3. This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

4. Defendants manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicles' transmissions were defective.

5. The Class Vehicles are equipped with Toyota's UA80 transmission, a transverse, eight-speed transmission marketed and hereinafter referred to as the "Direct Shift-8AT." Plaintiffs are informed and believe, and based thereon allege, that the Class Vehicles' Direct Shift-8AT Transmission is defective in its design and/or manufacture in that, among other problems, it causes harsh or

delayed shifting and engagement, delayed acceleration, hesitation, jerking, shuddering, and loss of power (the "8AT Transmission Defect").

6. The 8AT Transmission Defect is inherent in each Class Vehicle and was present at the time of sale.

7. Toyota developed the Direct Shift 8AT in a joint venture with Aisin AW, a third-party transmission manufacturer. On information and belief, in response to heightened consumer demand and governmental pressure to reach unprecedented miles-per-gallon ratings, Toyota attempted to create an 8-speed transmission for a compact, transverse application by using a single axis and only two planetary gears, rather than the typical four. Unfortunately, while Toyota touted the resulting Direct Shift 8AT transmission as "achieving one of the world's best transmission efficiencies" that "lower[] a vehicle's fuel requirements" and even improving "straight driving" and "cornering stability,"[1] in practice, the new transmission design causes harsh and delayed shifting, delayed and unpredictable acceleration, jerking forward, and other symptoms listed *supra*.

8. Despite these widespread and well-known problems, Toyota continued to market the Direct Shift 8AT Transmission not only as a fuel-efficient model, but one that would achieve "quick and smooth response to accelerator pedal operation" which would "create[] an 'as desired' direct driving feel..."[2]

9. Owners of Toyota vehicles equipped with the Direct Shift 8AT have complained to the National Highway Traffic Safety Administration ("NHTSA") in droves. One such class member's complaint describes the 8AT Transmission Defect succinctly:

[1] *Available at* https://global.toyota/en/powertrain/transmission/

[2] *Id.*

> THE CAR ABRUPTLY JERKS FORWARDS OR SLOWS DOWN WHEN SWITCHING GEARS. THERE IS A KNOCKING SOUND WHEN YOU ACCELERATE. THE RPM INCREASE TO 6K-7K BEFORE THE NEXT GEAR IS ENGAGED AND THEN CAR ABRUPTLY THRUSTS FORWARD. THE CAR ACCELERATES AND DECELERATES RANDOMLY. THIS CAR CANNOT BE DRIVEN SAFELY IN THIS CONDITION. THE CAR ONLY HAVE 1116 MILES AND IS A 2019 MODEL.

(*See* ¶ 73(b).)

10. Owners of Direct Shift 8AT transmissions also report the safety hazards that the 8AT Transmission Defect causes:

> HESITATION/LAGGING ISSUES AT BOTH HIGH AND LOW SPEEDS- HESITATES BOTH WHILE DRIVING AND WHILE TAKING OFF FROM A STOPPED POSITION - SHIFTS ARE HORRIBLE THE CAR JERKS A LOT- IN CRUISE CONTROL GOING 70-75 MPH JERKS HARD, WITH NO CARS IN FRONT OF IT. ACCELERATION IS HORRIBLE SO MUCH SO, THAT WE ALMOST GET REAR ENDED WHEN TRYING TO MERGE WITH TRAFFIC. THIS STARTED A WEEK AFTER I PURCHASED THIS IN JULY- JAN 13 WE WERE ALMOST IN AN ACCIDENT TO CAR NOT ACCELERATING AND JERKING

(*See* ¶ 74(k), *infra.) See also,* ¶ 74(p):

> CAR IS HESITATING/SLUGGISH WHEN ACCELERATING FROM A STOP/ROLLING STOP. TAKES FOREVER TO GET TO HIGHWAY SPEEDS, WHICH IS EXTREMELY DANGEROUS. WHEN THERE IS TRAFFIC ON A HIGHWAY, CHANGING LANES INTO A LANE IN WHICH

> TRAFFIC IS GOING FASTER IS EXTREMELY HARD DUE TO FEAR BEING REAR-ENDED. CAR STRUGGLES TO GET FROM 0-45 AND WILL ONLY DO SO WHEN THE ACCELERATOR IS STEPPED DOWN ALL THE WAY.

11. Despite these problems, when Direct Shift 8AT owners present their vehicles to Toyota's authorized repair facilities, they receive either ineffective software updates, or no repairs at all:

> THE TRANSMISSION IN THE 2018 XSE V6 IS JUNK. IT IS JERKY ON ACCELERATION (LIKE DRIVING A MANUAL TRANSMISSION) AND WHEN SHIFTING FROM 1ST TO 2ND THE SHIFTS ARE HARD, AND CLUNKY. EVEN WORSE WHEN COLD. WHEN COMING TO A STOP, THE SHIFT FROM 2ND TO 1ST HAPPENS WITH A HUGE THUD. **HAD DEALER TAKE A LOOK AND THEY TOLD ME NOTHING WAS WRONG AFTER HOOKING IT UP TO THEIR COMPUTERS.**

(*See* ¶ 74(q).)

12. Although Defendants were sufficiently aware of the 8AT Transmission Defect from pre-production testing, design failure mode analysis, calls to the customer service hotline, and customer complaints made to dealers, this knowledge and information was exclusively in the possession of Defendants and their network of dealers and, therefore, unavailable to consumers.

13. Despite access to aggregate internal data, Defendants have actively concealed the existence of the defect.

14. The 8AT Transmission Defect is material because it poses a serious safety concern. For example, delayed acceleration, unpredictable engagement and shifting, jerking, and loss of power severely affect the driver's ability to control the car's speed, acceleration, and deceleration, and can make it difficult

to safely merge into traffic or to turn left across incoming traffic.

15. Had Defendants disclosed the 8AT Transmission Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

## THE PARTIES

**Plaintiff Raul Morales**

16. Plaintiff Raul Morales is a California citizen who resides in Temecula, California.

17. In or around January 2019, Plaintiff Morales leased a new 2019 Toyota Highlander from Temecula Valley Toyota, an authorized Toyota dealer in Temecula, California.

18. Plaintiff Morales leased his Highlander vehicle primarily for personal, family, or household use.

19. Passenger safety and reliability were important factors in Plaintiff Morales' decision to lease his vehicle. Before making his lease, Plaintiff Morales reviewed the Toyota brochure for the Highlander as well as the Monroney Sticker or "window sticker" which listed official information about the vehicle. Plaintiff Morales believed that the Highlander would be a safe and reliable vehicle.

20. Toyota's omissions were material to Plaintiff Morales. Had Toyota disclosed its knowledge of the 8AT Transmission Defect before Mr. Morales leased his Highlander, Plaintiff Morales would have seen and been aware of the disclosures. Furthermore, had he known of the 8AT Transmission Defect, Plaintiff Morales would not have leased his vehicle, or would have paid less for it.

21. From the inception of his lease, Mr. Morales' vehicle has exhibited delayed acceleration or hesitation when accelerating out of a stop and delayed

acceleration or hesitation after slowing and reaccelerating. The vehicle has also exhibited jerking and shuddering.

22. On or around July 13, 2019, with approximately 6,741 miles on the odometer, Mr. Morales brought his vehicle back to Temecula Valley Toyota, complaining that his vehicle was hesitating on acceleration from a stop as well as after slowing and reaccelerating. In response, the dealership failed to perform any repairs and simply told Mr. Morales that the vehicle was "operating as designed."

23. Plaintiff Morales' vehicle continues to exhibit the 8AT Transmission Defect.

24. At all times, Plaintiff Morales, like all Class Members, has driven his Toyota Highlander in a manner that is and was both foreseeable, and in which it was intended to be used.

**Plaintiff Robinson Bertrand**

25. Plaintiff Robinson Bertrand is a Georgia citizen who resides in McDonough, Georgia.

26. On or around March 30, 2018, Plaintiff Bertrand purchased a new 2018 Toyota Highlander from Jim Ellis Toyota of McDonough, an authorized Toyota dealer in McDonough, Georgia.

27. Plaintiff Bertrand purchased his vehicle for personal, family, or household use.

28. Passenger safety and reliability were important factors in Plaintiff Bertrand's decision to purchase his vehicle. Before making his purchase, Plaintiff Bertrand test drove the vehicle with a Toyota dealership representative for approximately 10 to 15 miles, during which Plaintiff Bertrand and the dealership representative discussed the vehicle and its features. Plaintiff Bertrand believed that the Highlander would be a safe and reliable vehicle.

29. Toyota's omissions were material to Plaintiff Bertrand. Had Toyota disclosed its knowledge of the 8AT Transmission Defect before Mr. Bertrand purchased his Highlander, Plaintiff Bertrand would have seen and been aware of the disclosures. Furthermore, had he known of the 8AT Transmission Defect, Plaintiff Bertrand would not have purchased his vehicle, or would have paid less for it.

30. Since purchase, Mr. Bertrand's vehicle has exhibited hard shifting and jerking when changing gears at highway speeds and failure to shift into second gear.

31. On or around June 24, 2019, with approximately 20,626 miles on the odometer, Mr. Bertrand brought his vehicle back to Jim Ellis Toyota, complaining that his vehicle was failing to shift into second gear. The dealership failed to perform any repairs in response.

32. Plaintiff Bertrand's vehicle continues to exhibit the 8AT Transmission Defect.

33. At all times, Plaintiff Bertrand, like all Class Members, has driven his Toyota Highlander in a manner that is and was both foreseeable, and in which it was intended to be used.

**Plaintiff Rosalie Quinones**

34. Plaintiff Rosalie Quinones is a New York citizen who resides in Briarwood, New York.

35. On or around March 8, 2019, Plaintiff Quinones leased a new 2019 Lexus RX350 from Lexus of Queens, an authorized Lexus dealer in Long Island City, New York.

36. Plaintiff Quinones leased her vehicle for personal, family, or household use.

37. Passenger safety and reliability were important factors in Plaintiff

Quinones' decision to lease her vehicle. Before entering into her lease, Plaintiff Quinones reviewed the vehicle's Monroney sticker (a.k.a. window sticker) and also reviewed brochures authored by Defendants regarding her vehicle. Plaintiff Quinones believed that the RX350 would be a safe and reliable vehicle.

38. Toyota's omissions were material to Plaintiff Quinones. Had Toyota disclosed its knowledge of the 8AT Transmission Defect before Ms. Quinones leased her RX350, Plaintiff Quinones would have seen and been aware of the disclosures. Furthermore, had she known of the 8AT Transmission Defect, Plaintiff Quinones would not have leased her vehicle or would have paid less for it.

39. Since the beginning of her lease, Ms. Quinones' vehicle has exhibited pulling and jerking on acceleration and sudden unintended acceleration without pressing the gas.

40. On or around August 8, 2019, with approximately 2,728 miles on the odometer, Ms. Quinones brought her vehicle back to Lexus of Queens, reporting, as recorded on her repair order, that her vehicle "jumps into gear when doing local speeds 35-40mph" and "lurches forward without pressing gas." In response, the dealership performed software updates.

41. Following the dealership visit, Plaintiff Quinones' vehicle has continued to exhibit the 8AT Transmission Defect.

42. At all times, Plaintiff Quinones, like all Class Members, has driven her Lexus RX350 in a manner that is and was both foreseeable, and in which it was intended to be used.

**Defendants**

43. Defendant Toyota Motor Sales, U.S.A., Inc., is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. TMS is headquartered at

6565 Headquarters Dr, Plano, TX 75024. TMS designs and manufactures motor vehicles, parts, and other products for sale in California, in the United States, and throughout the world. TMS is the warrantor and distributor of the Class Vehicles in California.

44. Defendant Toyota Motor North America, Inc., is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. TMNA is headquartered at 6565 Headquarters Dr, Plano, TX 75024. According to Toyota's official website, TMNA "brings together Toyota's marketing, sales, engineering and manufacturing arms in North America on one shared, state-of-the-art campus."

45. Founded in 1937 and headquartered in Toyota City, Japan, Defendant Toyota Motor Corporation is a corporation organized under the laws of Japan. TMC manufacturers and distributes automobiles and is the parent company.

46. Defendants, through their various entities, design, manufacture, market, distribute, service, repair, sell, and lease passenger vehicles, including the Class Vehicles, nationwide and in California, New York, and Georgia.

47. At all relevant times, Defendants were and are engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in Riverside County and throughout the United States of America.

## JURISDICTION

48. This is a class action.

49. Members of the proposed Class, which includes citizens of all 50 states, or in the alternative, California, Georgia and New York, are citizens of states other than Texas, where TMS and TMNA are headquartered, and California, where TMS and TMNA are incorporated.

50. On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

51. Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

**VENUE**

52. Toyota, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate. Toyota is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

53. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff Morales resides in the County of Riverside, California. In addition, Plaintiff Morales' Declaration, as required under California Civil Code section 1780(d) but not pursuant to *Erie* and federal procedural rules, reflects that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, or a substantial part of property that is the subject of this action, is situated in Riverside County, California. It is attached as Exhibit 1.

**FACTUAL ALLEGATIONS**

54. Since 2016, Toyota has designed, manufactured, distributed, sold, and leased the Class Vehicles. Toyota has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles in California, New York, Georgia, and nationwide. Toyota warrants and services the Class Vehicles through its nationwide network of authorized dealers and service providers.

55. The Class Vehicles are equipped with Toyota's Direct Shift-8AT, a transverse, eight-speed transmission.

56. In 2016, Toyota touted the Direct Shift-8AT transmission as a new technology that would provide customers with "quick and smooth response to accelerator pedal operation" which would "create[] an 'as desired' direct driving

feel.."[3] In practice, however, Toyota's Direct Shift-8AT Transmission is plagued by numerous problems and safety concerns.

57. Toyota developed the Direct Shift 8AT in a joint venture with Aisin AW, a third-party transmission manufacturer. On information and belief, in response to heightened consumer demand and governmental pressure to reach unprecedented miles-per-gallon ratings, Toyota attempted to create an 8-speed transmission for a compact, transverse application by using a single axis and only two planetary gears, rather than the typical four. Unfortunately, while Toyota touted the resulting Direct Shift 8AT transmission as "achieving one of the world's best transmission efficiencies" that "lower[] a vehicle's fuel requirements" and even improving "straight driving" and "cornering stability,"[4] in practice, the new transmission design causes harsh and delayed shifting, delayed and unpredictable acceleration, jerking forward, and other symptoms listed *supra*.

58. The 8AT Transmission Defect causes unsafe conditions, including hesitation, delayed and unpredictable acceleration, jerking, shuddering, harsh and delayed engagement and shifting, and loss of power. The following Class Member complaint to the National Highway Traffic Safety Administration ("NHTSA") provides an example:

> Upon acceleration, car hesitates for a few seconds, RPMs go to 5000 until vehicle slowly starts to move. Feels like there is no proper synch between engine and transmission. Dangerous when passing or avoiding a vehicle ahead of you. The same issue [occurs] while using the cruise control, it jumps from a few RPMs to 5K+…I have to brake to avoid ramming a car ahead of me.

---

[3] *Available at* https://global.toyota/en/powertrain/transmission/

[4] *Id.*

*See* paragraph 76(k), *infra* (spelling mistakes corrected).

59. The 8AT Transmission Defect alleged is inherent in and the same for all Class Vehicles.

60. The 8AT Transmission Defect is material to consumers because it presents a serious safety concern. For example, delayed acceleration, unpredictable engagement and shifting, jerking, and loss of power severely affect the driver's ability to control the car's speed, acceleration, and deceleration, and can make it difficult to safely merge into traffic or to turn left across incoming traffic.

61. Class Member complaints to NHTSA, cited *infra*, demonstrate the unsafe and widespread nature of the 8AT Transmission Defect.

**Toyota Had Superior and Exclusive Knowledge of the 8AT Transmission Defect**

62. Toyota had superior and exclusive knowledge of the 8AT Transmission Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

63. Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased or leased their respective Class Vehicles, and since 2017, if not earlier, Toyota knew about the 8AT Transmission Defect through sources not available to consumers, including pre-release testing data, early consumer complaints to Toyota and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from Toyota dealers about the problem. Publicly available facts set forth *infra* further confirm Toyota's knowledge.

64. Toyota is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Toyota conducts tests, including pre-

sale durability testing, on incoming components, including the Direct Shift-8AT Transmissions, to verify the parts are free from defect and align with Toyota's specifications. Thus, Toyota knew or should have known that the subject Direct Shift-8AT Transmissions were defective and prone to put drivers in a dangerous position due to the inherent risk of the defect.

65. Additionally, Toyota should have learned of this widespread defect from the sheer number of reports received from dealerships and from customer complaints directly to Toyota. Toyota's customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

66. Indeed, as of November 2018, many Class Members had reported the 8AT Transmission Defect directly to Toyota at Toyota's owners' forum at www.toyota.com, as reported by a Class Member complaining to NHTSA regarding the 8AT Transmission Defect.

67. Toyota's warranty department similarly analyzes and collects data submitted by its dealerships in order to identify trends in its vehicles. It is Toyota's policy that when a repair is made under warranty the dealership must provide Toyota with detailed documentation of the problem and the fix employed to correct it. Dealerships have an incentive to provide detailed information to Toyota, because they will not be reimbursed for any repairs unless the justification is sufficiently detailed.

68. Toyota quietly issues notifications to its dealerships called Technical Service Bulletins ("TSBs.") Through TSBs, Toyota provides directions to its authorized dealerships for how to respond to customer complaints and requests for repairs.

69. On December 11, 2017, Toyota issued TSB 0330-17, "SHIFT SHOCK ON INITIAL STARTUP OR REACCELERATION." Toyota issued this TSB to address customer complaints regarding the Direct Shift-8AT Transmission. The TSB provided that "some 2018 model year Camry vehicles may exhibit a shift shock from Park to Reverse on initial startup or delay/shock when reaccelerating quickly after slowing down to a stop or near stop. The Engine Control Module (ECM) (SAE term: Powertrain Module [PCM]) logic has been updated to address this condition." On information and belief, this TSB failed to resolve the 8AT Transmission Defect.

70. On January 8, 2018, Toyota issues TSB 00001-18. Toyota issued this TSB to address concerns of "harsh shift or shift flare" after transmission replacements due to a software mismatch.

71. On December 17, 2018, Toyota issued TSB 0160-18, "Transaxle Whine Noise, Harsh Shift, MIL ON, or Reduced Power." Toyota issued this TSB in response to vehicles exhibiting a harsh shift, reduced power, and other transmission symptoms. In this TSB, Toyota directed its authorized dealerships to replace the transmissions with a "remanufactured" transmission where applicable.

72. On April 18, 2019, Toyota issued "Customer Support Program ZJC" as part of Toyota's "continuing efforts to ensure the best in customer satisfaction." Under the Program, Toyota agreed to provide additional warranty coverage for damage caused by an insufficiently bent washer tab within the transmission. Toyota acknowledged that it "has received reports about potential symptoms, such as a whine noise from the transmission while driving, harsh shifting, reduced power, and master warning light/check engine light illumination…."

73. On information and belief, neither the TSBs nor the Customer

Support Program resolved the 8AT Transmission Defect.

74. In addition, Toyota monitors customers' complaints made to the National Highway Traffic Safety Administration ("NHTSA.") Federal law requires automakers like Toyota to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

75. Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Toyota knew or should have known of the many complaints about the 8AT Transmission Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Toyota to the 8AT Transmission Defect.

76. The following are examples of complaints from owners and lessees of the Class Vehicles concerning the 8AT Transmission Defect available through NHTSA's website, www.safercar.gov. Spelling and grammar mistakes appear as in original.

a. **DATE OF INCIDENT:** March 13, 2018
**DATE COMPLAINT FILED:** July 11, 2019
**NHTSA/ODI ID:** 11230971
**SUMMARY:** TL* THE CONTACT OWNS A 2018 TOYOTA HIGHLANDER. WHILE DRIVING VARIOUS SPEEDS AND DEPRESSING THE ACCELERATOR PEDAL, THE VEHICLE WOULD NOT IMMEDIATELY RESPOND. APPROXIMATELY TWO SECONDS AFTER DEPRESSING THE ACCELERATOR

PEDAL, THE ENGINE REVVED AND THE VEHICLE ABRUPTLY ACCELERATED FORWARD. THE VEHICLE WAS TAKEN TO CONICELLI TOYOTA (550 W. RIDGE PIKE, CONSHOHOCKEN, PA) ON SEVERAL OCCASIONS, BUT NO FAILURE WAS FOUND. THE CONTACT STATED THAT THE FAILURE CONTINUED. THE MANUFACTURER WAS NOTIFIED. THE FAILURE MILEAGE WAS 3,450.

b. **DATE OF INCIDENT:** May 1, 2018
**DATE COMPLAINT FILED:** November 18, 2018
**NHTSA/ODI ID:** 11152280
**SUMMARY:** 1. CONSTANT JERKING SENSATION OCCURS BEFORE VEHICLE SHIFTS INTO LOWER GEARS WHILE AT RELATIVELY LOW SPEEDS AND THROTTLE SETTINGS (25-45 MPH, STOP AND GO CITY DRIVING, MAINTAINING SPEED).

2. WHEN MINIMAL INCREASE IN POWER IS NEEDED OR A MILD GRADE IS ENCOUNTERED, ADDITIONAL THROTTLE PRESSURE SEEMS ONLY TO RESULT IN LOSS OF POWER UNTIL THE TRANSMISSIONS SHIFTS INTO SOME LOWER GEAR. THE VEHICLE THEN ACCELERATES TOO RAPIDLY, FOLLOWED BY THE NEED TO REDUCE THROTTLE PRESSURE – OR APPLY BRAKES - WHICH IN TURN CAUSES THE TRANSMISSION TO SHIFT BACK TO A HIGHER GEAR. THE SEQUENCE THEN REPEATS ITSELF.

3. NOTE: POOR DRIVABILITY ISSUES ARE REDUCED WHEN THE ENGINE IS COLD. ALSO KEEPING RPM ABOVE 2000 HELPS.

4. DEPENDING ON DRIVING CONDITIONS, THE VEHICLE WILL ACCELERATE WELL WHILE SHIFTING UP THROUGH THE GEARS BUT SEEMS TO LOOSE POWER AS RPM DROPS, FORCING A DOWNSHIFT OR INCREASED THROTTLE POSITION.

5. WHEN UNDER SLIGHT ENGINE LOAD, THE SUSPENSION SEEMS TO AMPLIFY ROAD BUMPS, TO THE EXTENT OF FINDING BUMPS WHERE THERE ARE NONE. THIS

CONDITION IS REDUCED WHILE AT IDLE THROTTLE SETTINGS AND COASTING.

6. A RECENT DRIVE THROUGH THE MOUNTAINS PROMPTED ME TO RESORT TO MANUALLY SHIFTING THE TRANSMISSION TO IMPROVE DRIVABILITY BECAUSE OF HILLS AND CURVES.

7. I FREQUENTLY RESORT TO DRIVING IN S4 EXCEPT FOR INTERSTATE DRIVING SO AS TO KEEP RPM ABOVE 2000 TO IMPROVE DRIVABILITY.

8. FREQUENTLY THE ENGINE FEELS TO BE MISSING, RESULTING IN VIBRATION THROUGH STEERING WHEEL AND ACCELERATOR PEDAL.

9. ON FOUR OCCASIONS SINCE OWNERSHIP THE RX HAS SUDDENLY AND EXPECTANTLY ACCELERATED FOR UNKNOWN REASONS, FORCING EMERGENCY BREAKING. THIS IS AN EXTREME SAFETY ISSUE.

10.WHEN USING CRUISE CONTROL (~65 MPH) AND IF THE SET SPEED IS REDUCED A COUPLE OF MPH, THE RPM JUMPS TO 6,000.

11.TRANSMISSION SLOW TO CHOOSE A GEAR WHEN ACCELERATING INTO TRAFFIC.

c. **DATE OF INCIDENT:** July 1, 2018
**DATE COMPLAINT FILED:** September 26, 2018
**NHTSA/ODI ID:** 11131655
**SUMMARY:** MY 2018 SIENNA LE IS EXPERIENCING ACCELERATION PROBLEMS. I HAD THE SOFTWARE UP DATED BUT AFTER APPROXIMATELY 1,000 MILES THE PROBLEM IS RETURNING. THIS PROBLEM IS ESPECIALLY UNSAFE WHEN MERGING ONTO THE HIGHWAY.

d. **DATE OF INCIDENT:** July 7, 2018
**DATE COMPLAINT FILED:** November 8, 2018
**NHTSA/ODI ID:** 11150133
**SUMMARY:** HESITATION UPON ACCELERATION. THE ENGINE DOES NOT RESPOND IN A LINEAR MANNER WHEN PRESSING THE GAS PEDAL.

e. **DATE OF INCIDENT:** October 10, 2018
**DATE COMPLAINT FILED:** January 16, 2019
**NHTSA/ODI ID:** 11170282
**SUMMARY:** THE VAN STRUGGLES TO ACCELERATE. THERE IS NO WAY TO TURN OFF ECO MODE. NO BUTTON IS AVAILABLE. VAN STRUGGLES TO GO UP HILLS , EXCELERATE THRU INTERSECTIONS AND ALWAYS HUNTING FOR GEARS OR STUCK IN A GEAR AND SOUNDS AND ACTS VERY HEAVY ON POWER TRAIN END. THERE IS AN OPTION TO TURN OFF ECO LIGHT.TURNING OFF ECO LIGHT DOES NOTHING BUT HIDE THE PROBLEM. WE NEED AN OPTION TO COMPLETE DISABLE ECO MODE WITH UPDATE OR WITH A BUTTON.

f. **DATE OF INCIDENT:** October 5, 2018
**DATE COMPLAINT FILED:** November 20, 2018
**NHTSA/ODI ID:** 11152940
**SUMMARY:** 1. EVEN TO GO ON A SMALL UPHILL SLOPE, THE VEHICLE(V6) REALLY STRUGGLES. AND WHEN I TRY TO ACCELERATE, IT KIND OF STALLS OR SLOWS DOWN FOR A MOMENT, THEN TRIES TO SPEED UP BUT ITS STILL VERY SLOW. I'M FACING THIS ISSUE EVERY DAY. MY OTHER CAR 2011 CAMRY(V4) IS VERY SMOOTH AT THE EXACT SAME PLACES. CANT BELIEVE THE PICKUP IS THIS POOR WITH A NEW CAR.

2. ON HIGHWAYS, JUST TO MAINTAIN THE SPEED OVER 65 MPH ON A RECENT TRIP, I HAD TO PRESS REAL HARD ON GAS THE WHOLE TIME, EVEN AFTER THAT, I CAN CLEARLY TELL THE VEHICLE WAS WORKING EXTRA HARD JUST TO BE OVER 65. THIS ISSUE IS CONSISTENT EVERY TIME I GO ON HIGHWAYS.

MANY OWNERS HAVE REPORTED THE ABOVE ISSUES AT

TOYOTA OWNERS FORUM:

HTTPS://WWW.TOYOTA.COM/OWNERS/COMMUNITY/ASK-AN-OWNER/QUESTION-DETAILS/ID/62777282

BOTH ISSUE#1 AND 2 MIGHT LEAD TO/TRIGGER A BACK END COLLISION BECAUSE THE CARS COMING FROM BEHIND WONT KNOW THAT THE VEHICLE WILL SLOW DOWN (DUE TO POOR PICKUP) ALL ON A SUDDEN ON EVEN A SMALLER SLOPE. SAME WITH HIGHWAYS TOO AND GOT TAILGATED ON MANY OCCASSIONS ON HIGHWAYS.

RECENTLY DID THE DIAGONOSTICS AT THE DEALERHSIP RECENTLY BUT THEY SAID EVERYTHING LOOKS GOOD.

g. **DATE OF INCIDENT:** February 1, 2019
**DATE COMPLAINT FILED:** April 3, 2019
**NHTSA/ODI ID:** 11193549
**SUMMARY:** SEVERE HESITATION WHEN GAS IS APPLIED, ESPECIALLY WHEN CROSSING HEAVY TRAFFIC AND INSTANT POWER/QUICK ACCELERATION NEEDED. ALSO NOTED WHEN GOING AROUND CORNERS, AFTER CAR HAS SLOWED DOWN BELOW 5 MPH TO MAKE THE CORNER. GAS IS APPLIED WITH HESITATION. NOTED MORE WHEN CAR IS AT A COMPLETE STAND STILL/MOVING AT SLOW SPEED THEN GAS APPLIED TO MOVE FORWARD. CAR DOES NOT MOVE/REACT INSTANTLY.

h. **DATE OF INCIDENT:** February 8, 2019
**DATE COMPLAINT FILED:** April 22, 2019
**NHTSA/ODI ID:** 11202999
**SUMMARY:** ...TRANSMISSION SHIFT ROUGHLY, NOT SMOOTH SHIFTING….SO FAR MY CAR HAS ONLY 20K MILES ON IT…

i. **DATE OF INCIDENT:** February 15, 2019
**DATE COMPLAINT FILED:** March 4, 2019
**NHTSA/ODI ID:** 11184017
**SUMMARY:** IMMEDIATELY AFTER PURCHASING THIS NEW 2019 TOYOTA SIENNA I BECAME AWARE OF THE VEHICLE HAVING ACCELERATION PROBLEMS WHILE ATTEMPTING

TO ACCELERATE GRADUALLY IN A LOW SPEED/LOW TORQUE SETTING. THIS OCCURS AT WHAT COULD BE DESCRIBED AS PARKING LOT SPEEDS, 5 TO 25 MPH, PRIMARILY, ALTHOUGH THE VEHICLE HESITATES AND THEN LURCHES ALSO AT HIGHER SPEEDS WHEN DOWNSHIFTING TO GAIN TORQUE IN A 30-50 MPH RANGE ALSO.

THIS HESITATION, BALKING, AND THEN RAPID LURCHING FORWARD AT LOW SPEEDS HAS CAUSED PASSENGERS TO COMMENT ABOUT "WHIPLASH" AND BEING PUSHED BACK INTO THEIR SEATS WHEN THE VEHICLE DOES ENGAGE WITH UNEXPECTED FORWARD MOTION.

THIS VEHICLE WAS PURCHASED ON 2-18-2019. AFTER DRIVING THE VEHICLE FOR A REASONABLE AMOUNT OF TIME AND MILES I CONTACTED OUR SALES AGENT WHO SET A SERVICE APPOINTMENT FOR MONDAY FEB 25, 2019.

ON 2-25-2019 I DROVE THE VEHICLE TO THE DEALER'S SERVICE DEPT WITH "MILEAGE IN" OF 250 MI. AND "MILEAGE OUT" OF 251.

SERVICE INVOICE NUMBER 784852 STATES THAT THE ECU WAS CALIBRATED AND RESET.

UPON DRIVING THE VEHICLE IT BECAME OBVIOUS THAT THE PROBLEMS WERE NO DIFFERENT AND PERHAPS WORSE. ON MARCH 1, 2019 I RETURNED THE VEHICLE TO THE DEALER AND TOOK THE SERVICE MANAGER AND A TECH-EXPERT FOR A RIDE. THE TECH ACKNOWLEDGED THE STALL AND LURCH PHENOMENON AND SAID HE "HAS DEALT WITH THIS BEFORE".

THE TECH AND THE SERVICE MANAGER TOLD ME THEY WERE OPENING A CASE WITH TOYOTA FOR POSSIBLE INPUT TO RESOLVE THIS PROBLEM.

I BELIEVE THIS A SERIOUS POTENTIAL SAFETY ISSUE AS THE FORWARD LURCHING OF THE VEHICLE COULD RESULT IN SERIOUS INJURY AS A RESULT VEHICLE DESIGN

AND ENGINEERING. OTHER TOYOTA OWNERS HAVE DISCUSSED THIS PROBLEM VIA INTERNET FORUMS. IT WOULD APPEAR TO AFFECT 2018 & 2019 SIENNAS WITH "THROTTLE BY WIRE" DESIGN AND THEIR 8 SPEED TRANSMISSION.

j. **DATE OF INCIDENT:** March 2, 2019
**DATE COMPLAINT FILED:** March 4, 2019
**NHTSA/ODI ID:** 11184028
**SUMMARY:** TL* THE CONTACT OWNS A 2018 TOYOTA SIENNA. WHILE DRIVING APPROXIMATELY 45-50 MPH, THE ACCELERATOR PEDAL WAS DEPRESSED, BUT FAILED TO RESPOND. ADDITIONALLY, THE VEHICLE DECELERATED INDEPENDENTLY ON OCCASION. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. LARRY H MILLER TOYOTA COLORADO SPRINGS (LOCATED AT 5115 NEW CAR DR, COLORADO SPRINGS, CO 80923, (719) 419-5832) WAS NOTIFIED OF THE FAILURE. THE CONTACT STATED THAT THE FAILURE RECURRED ON SEVERAL OCCASIONS. THE MANUFACTURER WAS NOT CONTACTED. THE APPROXIMATE FAILURE MILEAGE WAS 10,000.

k. **DATE OF INCIDENT:** March 18, 2019
**DATE COMPLAINT FILED:** May 27, 2019
**NHTSA/ODI ID:** 11210159
**SUMMARY:** APON ACCESLARATION , CAR HESITATE FOR A FEW SECOND, RPM GOES TO 5000 UNTIL VEHICLE SLOWLY START TO MOVE. FEELS LIKEW THER IS NO PROPER SYNCH BETWEEN ENGING AND TRANSMISSION. DANGEROUS WHEN PASSING OR AVOIDING A VEHICLE AHEAD OF YOU. THE SAME ISSUE WHILE USING THE CRUSE CONTROL, IT JUMPS FROM A FEW RPMS TO 5K + THAT ALWAYS I HAVE TO BRAKE TO AVID RAMMING A CAR AHEAD OF ME. BRAKES GET SOF THAT I HAVE TO PUMP IT A FEW TIMES. MILEAGE IS 1780 MILES.

a. **DATE OF INCIDENT:** March 20, 2019
**DATE COMPLAINT FILED:** March 22, 2019
**NHTSA/ODI ID:** 11190851
**SUMMARY:** I NOTICED A HESITATION WITH THE VEHICLE WHEN I PRESSED THE GAS PEDAL. ON ONE INCIDENT ON I-

288 I PRESSED THE GAS TO PASS A CAR AND IT HESITATED AND THE RPM JUMPTED TO 51/2. FINALLY THE CAR ENGAGED SO I COULD PASS. I THOUGHT IT WAS GOING TO BLOW UP. ON THE WAY HOME ON I-295 IT REPEATED AGAIN ONLY THIS TIME THE RPM JUMPED TO 4. THIS WAS ON 3/20 AND THE DEALER STILL HAS THE VEHICLE AND CAN'T FIGURE OUT THE PROBLEM. THE SERVICE MANAGER DID DRIVE IT WITH ME AND FELT THE HESITATION.

b. **DATE OF INCIDENT:** March 31, 2019
**DATE COMPLAINT FILED:** April 1, 2019
**NHTSA/ODI ID:** 11193046
**SUMMARY:** THE CAR ABRUPTLY JERKS FORWARDS OR SLOWS DOWN WHEN SWITCHING GEARS. THERE IS A KNOCKING SOUND WHEN YOU ACCELERATE. THE RPM INCREASE TO 6K-7K BEFORE THE NEXT GEAR IS ENGAGED AND THEN CAR ABRUPTLY THRUSTS FORWARD. THE CAR ACCELERATES AND DECELERATES RANDOMLY. THIS CAR CANNOT BE DRIVEN SAFELY IN THIS CONDITION. THE CAR ONLY HAVE 1116 MILES AND IS A 2019 MODEL.

77. Toyota owners also reported the 8AT Transmission Defect in online forums:

**Cargurus.com – 2018 Camry Transmission – 8 Speed (May 22, 2018)**

a. Posted by John on May 22, 2018: 2018 Camry Transmission – 8 speed – why having problems? Is this 1st Toyo car w/ 8 speeds?

b. Posted by GuruT1YJZ in Summer 2018 - …Back to to the 8 speed trans very dissatisfied with it at this time. It never seems to never know what gear it wants. It shifts up when not expected and hesitates when shifting down and then drops 2 or3 gears all at once with more power then needed. I do seem to get some improvement by driving in shift mode limiting the trans to a 5or6 speed in town. I sure hope Toyota comes up with a reprogram for these problems.

c. Posted by LunchboxsteveC in November 2018 - After 3 months of putting up with this ridiculous 8 speed transmission in my 2018 Highlander, it started to develop harsh up/down-shifts between 1-2 and the identity crisis between gears as described. I traded it in on the

weekend for another manufacturer/model because I just couldn't deal with it any longer. Toyota dealership is aware of the problem but has no fix for it. Drove me crazy how terrible it drove for such a new vehicle. Toyota got this one very wrong and I hope they come out with a fix for everyone else that hates it as much as I did. I lost total confidence in the longevity by the way it's acting and I wanted to post it for everyone to steer them away from this model and others that have this Direct Shift UA80 series 8 speed transmission like the Camry/Sienna until they have fixed it. SHAME ON YOU TOYOTA for charging such a premium for such a terrible product!

d. Posted by Hc130 in January 2019 - My experience is similar on the 8 speed. I have 45K on it now and remains the same. The dealership says there are no error codes when I tell them, mutltiple times), and seems tight lipped about it. This is my 4th HIGHLANDER and love the model but this year is a disappointment because of the 8 speed and also because of the steering. That’s another let down.

e. Posted by GuruC549Z in March 2019 - Test drove a 2019 Camry with 8 speed and transmission had jerking motion. Sales man said it was because car was cold. I ran away after reading about the problems with the 2018 car. Too bad , nice car I would have bought it.

f. Posted by Ravi in March 2019 - my 2018 camry after 5k the transmission went out. its in the shop as we speak.

g. Posted by GuruLZGZB in April 2019 - Transmission shifting is not only irritating but dangerous, the hesitation on acceleration is really terrible. I have just over 5000 miles and regret almost every mile I drove. This is my first and last Toyota.

h. Posted by GuruC9YDZ in April 2019 - I have a 2019 Camry LE. Trust me the problem has not been fixed. Too bad I didn't test drive the car longer or pay more attention. The car hesitates at times when I accelerate or lunges. It's loud when I first drive the car for the day (especially when cold). Seems worse when I'm coming to a stop but do not completely stop and then accelerate. An example would be coming to a red light and you have slowed to 10 - 15 mph and then the light changes to green and you press on the accelerator....... pause, hesitation, jerk. Maybe I should sue Toyota for whiplash. Didn't expect this in a new car. My 2002 Camry drove much much better.

i. Posted by GuruLR8JV in May 2019 - I have drove Toyota's for 30 years without any problems. I purchased a 2018 Camry with that ridiculous 8-speed transmission and have had continuous problems with the car jerking into gear. Toyota claims everything is fine with it. Took two Toyota transmission experts on a test drive one morning and they both felt the transmission jerk. Later, they told me that computer shows car's transmission is fine and that perhaps I should not buy a car with a new untested system---and should have waited till the bugs were worked out. So I am stuck basically with a lemon that scares me on the road---that Toyota is not going to fix. Sure, I can try to return it with my state's Lemon Law---but the deck is stacked way against me and I am a disabled veteran without funds or energy to put up the fight necessary to get Toyota to replace the car. After 30 years of brand loyalty I get this in return.

j. Posted by GUruLFXYX in May 2019 - My 2019 Camry's transmission is horrible. When accelerating from a stop or after having slowed in traffic and wanting to resume speed the car hesitates/lags when I put my foot on the gas and then jerks. When I put my foot on the gas there is about a 1 to 2 second lag/pause and then a jerk. The engine revs loudly. Once I'm up to 35 - 40 mph the car is fine. Have taken it to the dealership multiple times. They say it's 'normal characteristics' for the car.

k. Posted by GuruX2827 in July 2019 - 2019 RX 350, it wouldn't sift out of 1gear so I had sift it to park after stopping and back into drive 2 times and it started working. So Toyota still has problems. RX 350 has 3000 mile on it.

78. Likewise, owners of the 2018 Toyota Camry vehicle, which is also equipped with the Direct Shift 8AT Transmission, complained to NHTSA regarding the 8AT Transmission Defect. Some examples are posted below:

a. **DATE OF INCIDENT:** July 21, 2017
**DATE COMPLAINT FILED:** August 4, 2017
**NHTSA/ODI ID:** 11012898
**SUMMARY:** WHEN I'M TAKING OFF IT TAKES A FEWS SECONDS BEFORE IT CATCHES SPEED. EVEN IF I'M

PUSHING DOWN PRETTY MUCH ON THE WAY DOWN ON THE GAS PEDAL IT TAKES A WHILE BEFORE IT CATCHES SPEED. CARS BEHIND ME START PASSING ME. ALSO, MY BIGGEST CONCERN IS WHEN I'M MERGING INTO THE FREEWAY AND I'M TRYING TO CATCH SPEED IT WONT SPEED UP UNTIL A FEW SECONDS SO I GET NEVER THAT I'M TOO FAR IN AND A CAR BEHIND ME MIGHT HIT ME BECAUSE IT DOESN'T CATCH SPEED RIGHT AWAY AND ONCE IT CATCHES SPEED IT GOES EXTREMELY FAST BECAUSE I'M PUSHING SO FAR DOWN ON THE PEDAL BECAUSE IT DOESN'T CATCH IT RIGHT AWAY. I'VE GOTTEN SCARED OF FEW TIMES. I REALLY THINK SOMETHING DEFECTED WITH THIS CAR. AS MUCH AS I LOVE THE BODY OF THE CAR, THE SPEED CONTROL IS A REAL PROBLEM. I REALLY HOPE SOMEONE LOOKS INTO THIS. IT'S WHEN I'M STOPPED AND ON THE FREEWAY.

b. **DATE OF INCIDENT:** October 1, 2017
**DATE COMPLAINT FILED:** March 30, 2018
**NHTSA/ODI ID:** 11082116

c. **SUMMARY:** THE POWERTRAIN IS VERY ROUGH AT LOW SPEED. WHEN PEDAL IS PUMPED SLOWLY THE GEAR CHANGES WITH A THUD AND JERKING. THIS FEELS WORSE THAN A MANUAL GEAR CAR. THE CAR DROVE AROUND 7500MILES. COMPLAINT THE DEALERSHIP AND THEY NOTIFIED IT MAY BE DUE TO CAR COMPUTER ISSUE.

d. **DATE OF INCIDENT:** October 12, 2017
**DATE COMPLAINT FILED:** October 29, 2017
**NHTSA/ODI ID:** 11040851
**SUMMARY:** VEHICLE GAS THROTTLE RESPONSE WOULD HESITATE WOULD BE A LAG OF FEW SECONDS FOR VEHICLE TO PICK UP SPEED SLOW THROTTLE RESPONSE…

e. **DATE OF INCIDENT:** October 30, 2017
**DATE COMPLAINT FILED:** February 22, 2018
**NHTSA/ODI ID:** 11074222
**SUMMARY:** I'VE HAD THIS VEHICLE FOR ABOUT 4 MONTHS NOW. THE FIRST MONTH I NOTICED THERE IS SOMETHING WRONG WITH THE WAY THIS NEW VEHICLE ACCELERATES. WHEN STOPPED AND STARTING

MOVEMENT AGAIN THE VEHICLE SUDDENLY JERKS AND DOES NOT SPEED UP RIGHT AWAY. THE JERKING PART IS MY MAIN SAFETY CONCERN. I HAVE PREVIOUSLY OWNED OTHER TOYOTA MODELS AND NO OTHER MODEL HAS DONE THIS. I'M AFRAID SOMEONE WILL REAR END MY DUE TO THE SUDDEN JERKING AND THEN DELAYED RESPONSE OF THE VEHICLE TO ACCELERATE. IT IS ESPECIALLY DISTRESSING AT INTERSECTION LIGHTS, OFF RAMPS, AND STOP SIGNS. ANYWHERE REQUIRED TO STOP OR SLOW MOVEMENT AND THEN NEED TO ACCELERATE EVEN AT A MODERATE PACE. SOMETHING JUST IS NOT RIGHT.

f. **DATE OF INCIDENT:** November 7, 2017
**DATE COMPLAINT FILED:** February 26, 2018
**NHTSA/ODI ID:** 11074996
**SUMMARY:** I PURCHASED BRAND NEW 2018 CAMRY SE NOVEMBER 2017 ABOUT A WEEK AFTER PURCHASE I NOTICED THE CAR SHIFTS INTO GEAR ROUGHLY AND JERKS A LOT WHEN DRIVING SIMILAR TO DRIVING A MANUAL TRANSMISSION CAR SO I ATTEMPTED TO CONTACT THE SALESMAN WHO SOLD ME THE CAR ONLY TO GET THE RUNAROUND ABOUT WHO TO TALK TO FINALLY WHEN I TOOK MY CAR IN THEY CHECKED ALL 20 SOMETHING COMPUTERS ON THE CAR AND SAID THEY SAW NO ERRORS BEING REPORTED WENT FOR A TEST DRIVE NOTHING SO THEY SENT ME ON MY WAY CAR WAS STILL DOING THE SAME THING SO I TRIED A DIFFERENT TOYOTA DEALER LEFT THE CAR ALL DAY THEY CHECKED SYSTEMS SAID IT WAS UPDATED AND THAT I PROBABLY NEED TO DRIVE THE CAR MORE SO IT CAN GET ACCLIMATED WITH MY DRIVING SO I HAD THIS CAR FOR 3 MONTHS AND IT STILL DOES THE SAME THING HESITATION WHEN STEPPING ON THE GAS, REVS UP PRETTY HIGH BEFORE SWITCHING GEARS, HARD SHIFTS INTO GEARS, AND JERKING EXCESSIVELY THIS CAR SO FAR HAS BEEN A NIGHTMARE IM VERY UNSATISFIED WITH MY NEW CAR PURCHASE

g. **DATE OF INCIDENT:** May 18, 2018
**DATE COMPLAINT FILED:** November 11, 2017
**NHTSA/ODI ID:** 11096794
**SUMMARY:** 2018 TOYOTA CAMRY HAS BAD TRANSMISSION SINCE THE 1 ST WEEK OF HAVING THIS CAR IT HAS BEEN GIVING ME PROBLEMS IT SLAMS INTO GEAR SOMETIMES, IT HESITATES WHEN STEPPING ON THE GAS LIKE IT DOESN'T KNOW WEATHER TO GO OR NOT IT JERKS LIKE IT CANT FIND WHICH GEAR TO GO INTO THE CAR IS REALLY BAD AND I CANT SEEM TO GET ANY HELP FROM TOYOTA THEY TOLD ME TO KEEP DRIVING MAYBE THE CAR NEEDS TO GET USE TO MY DRIVING. THEY TOLD ME ITS A 4 CYLINDER THAT'S HOW THEY DRIVE. THEY TOLD ME I SHOULD DRIVE IT MANUAL MODE. IM JUST FED UP .

h. **DATE OF INCIDENT:** December 1, 2017
**DATE COMPLAINT FILED:** December 13, 2017
**NHTSA/ODI ID:** 11054478
**SUMMARY:** I PURCHASED MY VEHICLE ABOUT I MONTH A GO THE PROBLEM IS WHEN I SLOW DOWN TO AROUND 5 MPH AND THEN HIT THE GAS TO GO AGAIN THE CAR PICKS UP SPEED SUPER SLOWLY AND IT I HIT THE ACCULTURATOR HARD THE TRANSMISSION JERKS REALLY HARD ALMOST LIKE SOMEONE IS HITTING ME FROM THE BACK , I TOOK IT TO TOYOTA THEY KEEP SAYING THE CAR IS JUST FINE . WORST CHOICE EVER IAM NEVER BUYING TOYOTA AGAIN I DROVE A 2015 CAMRY MUCH BETTER THEN THE SHIT 2018 CAMRY THEY SAID IT'S BETTER BUT I SAY IT'S CHEAPER AND PROBABLY WON'T BE AS RELIABLE AS IT'S OLDER VERSION.. IT SUCK TO DRIVE IN THE CITY , ALSO THE ENGINE IS SUPER LOUD .

i. **DATE OF INCIDENT:** December 31, 2017
**DATE COMPLAINT FILED:** May 25, 2018
**NHTSA/ODI ID:** 11097879
**SUMMARY:** WHEN THE CAR IN THE LOW SPEED AROUND 20 MILES/HOUR AND THE ENGINE AROUND 2000RPM, THE TRANSMISSION IS WIRED TRYING TO FIND SPECIFIED GEAR, MAKE THE CAR SPEED INCREASED AND DECREASED, IT LIKE JERK THE CAR.

ANOTHER PROBLEM IS WHEN YOU TRYING TO SPEED UP CATCH UP CARS SPEED FROM LOWER SPEED ON HIGHWAY, PRESS THE GAS PEDAL, THE CAR JUST LIKE THINKING THE LIFE PHILOSOPHY THE RPM REACH 4000 THE CAR SUDDENLY SPEED UP.

j. **DATE OF INCIDENT:** January 1, 2018
**DATE COMPLAINT FILED:** March 13, 2018
**NHTSA/ODI ID:** 11078969
**SUMMARY:** 2018 CAMRY XSE V6 - IF THE CAR IS NOT FULLY WARMED UP AND YOU ACCELERATE FROM A STOP, THE SHIFT FROM 1ST TO 2ND GEAR IS VERY ROUGH. IT IS MORE PRONOUNCED IF YOU ARE ACCELERATING UP A HILL. THE ONLY WAY TO GET RID OF THE ROUGH 1ST TO 2ND GEAR SHIFT BEFORE THE CAR IS FULLY WARMED UP IS TO APPLY EXCESSIVE THROTTLE.

k. **DATE OF INCIDENT:** January 13, 2018
**DATE COMPLAINT FILED:** January 19, 2018
**NHTSA/ODI ID:** 11063797
**SUMMARY:** HESITATION/LAGGING ISSUES AT BOTH HIGH AND LOW SPEEDS- HESITATES BOTH WHILE DRIVING AND WHILE TAKING OFF FROM A STOPPED POSITION - SHIFTS ARE HORRIBLE THE CAR JERKS A LOT- IN CRUISE CONTROL GOING 70-75 MPH JERKS HARD, WITH NO CARS IN FRONT OF IT. ACCELERATION IS HORRIBLE SO MUCH SO, THAT WE ALMOST GET REAR ENDED WHEN TRYING TO MERGE WITH TRAFFIC. THIS STARTED A WEEK AFTER I PURCHASED THIS IN JULY- JAN 13 WE WERE ALMOST IN AN ACCIDENT TO CAR NOT ACCELERATING AND JERKING

l. **DATE OF INCIDENT:** January 30, 2018
**DATE COMPLAINT FILED:** January 31, 2018
**NHTSA/ODI ID:** 11065982
**SUMMARY:** THE TRANSMISSION CLUNKS WHEN THE LOWER FORWARD TRANSMISSION GEAR ENGAGES WHEN ACCELERATING ON TO THE HIGHWAY. THIS TRANSMISSION DEFECT CAN ALSO BE DESCRIBED AS A THUD THAT GIVES THE DRIVER THE IMPRESSION THE CAMRY TRANSMISSION WILL FAIL SHOULD THE DRIVER

CONTINUE TO APPLY PRESSURE ON THE ACCELERATOR PEDAL.

m. **DATE OF INCIDENT:** February 22, 2018
**DATE COMPLAINT FILED:** February 22, 2018
**NHTSA/ODI ID:** 11074305
**SUMMARY:** THE CAR HAS ACCELERATION/SPEED PROBLEMS. THE CAR HAS ONLY 200 MILES, TOOK IT IN TE HIGHWAY AND TAKES TOO LONG TO REACH HIGHWAY SPEED. IT RARELY REACHES AND STAYS AT LOWER SPEED. LIKE OTHERS IT SEEMS THIS CAMRY WILL HAVE A LOT REAR-END ACCIDENTS DUE TO THE LACK OF SPEED PERFORMANCE. I FEEL SCARE TO DRIVE THIS CAR, TOO DIFFICULT TO CHANGE LANES, TOO DIFFICULT TO KEEP UP WITH TRAFFIC. IF CARS ARE APPROACHING AT HIGHWAY SPEED AND YOU ARE CHANGING LINES YOU MORE THAN LIKELY WILL END UP REAR- END. IT TOOK ME TWO AND A HALF HOURS TO COMPLETE A 1 HOUR TRIP DUE TO LACK OF SPEED, CAR NOT RESPONDING AND FEAR OF GETTING REAR-END BY OTHER CARS WHO WERE HURNING BECAUSE CAR WOULDN'T SPEED UP. CAR IS TOO UNSAFE. I DON'T KNOW WHAT HAPPENED TO TOYOTA. WORST CAR EVER.

n. **DATE OF INCIDENT:** February 28, 2018
**DATE COMPLAINT FILED:** May 22, 2018
**NHTSA/ODI ID:** 11097333
**SUMMARY:** THE CAR KEEPS JUMPING FORWARD, IT CAN'T DECIDE WHEN IT WANTS TO SHIFT UP. WHEN STARTING FROM A STOP, OR DRIVING AND TRYING TO ACCELERATE, THE CAR TAKES OVER 5 SECONDS TO REALLY "TAKE" AND REALIZE YOU ARE PUSHING ON THE GAS. ALL IT DOES IS REV, A LOT.

o. **DATE OF INCIDENT:** March 12, 2018
**DATE COMPLAINT FILED:** March 20, 2018
**NHTSA/ODI ID:** 11080318
**SUMMARY:** I LEASED A LOW END CAMRY 6 MONTHS AGO. SINCE THEN I HAVE EXPERIENCED THE FOLLOWING PROBLEM ABOUT 20 TIMES. WHEN SLOWING TO A STOP USUALLY ON A SLIGHT UPGRADE THE ENGINE RPMS

INCREASE FROM THE 600 VALUE AT IDLE TO ABOUT 2200. THIS OCCURS IN A SPEED RANGE OF 0 TO 5 MPH. FORTUNATELY I HAVE MY FOOT ON THE BRAKE WHEN IT HAS HAPPENED AND GENERALLY AM NOT CLOSE TO THE CAR IN FRONT OF ME SO I AM ABLE TO HOLD THE CAR WITH THE FOOT BRAKE BUT GENERALLY NEED TO SHUT DOWN THE ENGINE TO ELIMINATE THE HIGH RPM AND WHEN RESTARTING ALL IS BACK TO NORMAL. I HAVE HAD THE CAR AT THE DEALERS 3 TIMES AND ALL IS "WELL" BASED ON THE COMPUTER DIAGNOSTICS. I SUSPECT A SOFTWARE PROBLEM IN THE COMPUTER BUT THAT FALLS ON DEAF EARS.

p. **DATE OF INCIDENT:** March 23, 2018
**DATE COMPLAINT FILED:** May 8, 2018
**NHTSA/ODI ID:** 11092567
**SUMMARY:** CAR IS HESITATING/SLUGGISH WHEN ACCELERATING FROM A STOP/ROLLING STOP. TAKES FOREVER TO GET TO HIGHWAY SPEEDS, WHICH IS EXTREMELY DANGEROUS. WHEN THERE IS TRAFFIC ON A HIGHWAY, CHANGING LANES INTO A LANE IN WHICH TRAFFIC IS GOING FASTER IS EXTREMELY HARD DUE TO FEAR BEING REAR-ENDED. CAR STRUGGLES TO GET FROM 0-45 AND WILL ONLY DO SO WHEN THE ACCELERATOR IS STEPPED DOWN ALL THE WAY. TRANSMISSION SHIFTS ARE VERY JERKY. SEEMS LIKE THE TRANSMISSION DOESN'T KNOW WHAT GEAR TO BE IN 90% OF THE TIME. ALL THESE SYMPTOMS APPEAR TO BE IN ONLY THE 4 CYLINDER MODEL OF THE 2018 CAMRYS.

q. **DATE OF INCIDENT:** March 26, 2018
**DATE COMPLAINT FILED:** April 4, 2018
**NHTSA/ODI ID:** 11083232
**SUMMARY:** THE TRANSMISSION IN THE 2018 XSE V6 IS JUNK. IT IS JERKY ON ACCELERATION (LIKE DRIVING A MANUAL TRANSMISSION) AND WHEN SHIFTING FROM 1ST TO 2ND THE SHIFTS ARE HARD, AND CLUNKY. EVEN WORSE WHEN COLD. WHEN COMING TO A STOP, THE SHIFT FROM 2ND TO 1ST HAPPENS WITH A HUGE THUD. HAD DEALER TAKE A LOOK AND THEY TOLD ME NOTHING WAS WRONG AFTER HOOKING IT UP TO THEIR COMPUTERS.

PRETTY DISAPPOINTED IN THE WAY THIS BRAND NEW CAR DRIVES. MAJOR HESITATIONS WHEN ACCELERATING. CAUSES ENTIRE CAR TO JERK UNTIL THE MOTOR SMOOTHS OUT. THIS LOYAL TOYOTA OWNER FOR OVER 30 YEARS IS STRONGLY THINKING ABOUT SWITCHING BRANDS. 5K MILES ON CAR.

r. **DATE OF INCIDENT:** May 1, 2018
**DATE COMPLAINT FILED:** May 15, 2018
**NHTSA/ODI ID:** 11094049
**SUMMARY:** THE 2018 TOYOTA CAMRY IS HAVING A PROBLEM SHIFTING AND ALLOWING THE CAR TO INCREASE SPEED

s. **DATE OF INCIDENT:** May 23, 2018
**DATE COMPLAINT FILED:** May 26, 2018
**NHTSA/ODI ID:** 11098076
**SUMMARY:** TRANSMISSION IS FEELING VERY JERKY AFTER 5000 MILES. HOLDING ON TO LOW GEARS WAY TOO LONG. I'M DOING 40 MPH AND THE RPM IS OVER 3500. THE TRANSMISSION SEEMS TO KEEP MISSING GEARS. CONSTANTLY DOWNSHIFTING. MILEAGE HAS SURPRISINGLY GONE DOWN. EVEN ON THE HIGHWAY WHEN IM DOING 65+ ITS STRUGGLING TO FIND GEARS AND KEEPS DOWNSHIFTING.

t. **DATE OF INCIDENT:** May 29, 2018
**DATE COMPLAINT FILED:** May 31, 2018
**NHTSA/ODI ID:** 11099058
**SUMMARY:** TL* THE CONTACT OWNS A 2018 TOYOTA CAMRY. WHILE DRIVING APPROXIMATELY 25 MPH, THE VEHICLE STARTED TO SHIFT GEARS VERY ROUGHLY AND THEN CAME TO A COMPLETE STOP. THE ACCELERATOR PEDAL WAS DEPRESSED, BUT THE VEHICLE FAILED TO ACCELERATE. THE CONTACT STATED THAT THE FAILURE OCCURRED EVERYDAY SINCE THE VEHICLE WAS PURCHASED THREE MONTHS AGO. THE VEHICLE WAS TAKEN TO DAYTONA TOYOTA (451 N NOVA ROAD ,DAYTONA BEACH, FLORIDA 32114) TWICE, BUT THE FAILURE WAS UNABLE TO BE DUPLICATED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE

VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 2,000.

u. **DATE OF INCIDENT:** May 29, 2018
**DATE COMPLAINT FILED:** June 7, 2018
**NHTSA/ODI ID:** 11100321
**SUMMARY:** NEW 2018 CAMRY SE WITH 458 MILES, 4 CYLINDER/8 SPEED AUTOMATIC TRANSMISSION. CAR HESITATES WHEN ACCELERATING AND CANNOT SEEM TO FIND THE CORRECT GEAR. MOST NOTICEABLE BETWEEN 1ST AND 3RD GEARS…

v. **DATE OF INCIDENT:** May 31, 2018
**DATE COMPLAINT FILED:** May 31, 2018
**NHTSA/ODI ID:** 11098994
**SUMMARY:** THIS CAR ONLY HAS 120 MILES ON IT, BUT THE PROBLEM HAS BEEN PRESENT SINCE I TOOK DELIVERY. UPON INITIAL ACCELERATION FROM A DEAD STOP, THERE IS A LONG DEAD ZONE IN THE ACCELERATOR LEADING TO POOR THROTTLE RESPONSE. IT'S HARD TO TELL WHEN THE VEHICLE IS GOING TO BEGIN MOVING. ONCE MOVING, THE TRANSMISSION JUMPS IN AND OUT OF VARIOUS GEARS, AND THE CAR CAN'T DECIDE WHICH GEAR TO USE. IT ALSO SLAMS IN AND OUT OF SOME GEARS WITH NO CONSISTENCY. IT SEEMS LIKE A PROGRAM ISSUE, BUT IT NEEDS TO BE HANDLED VERY SOON OR THIS TRANSMISSION MAY NOT LAST 10-20K MILES.

w. **DATE OF INCIDENT:** June 1, 2018
**DATE COMPLAINT FILED:** June 30, 2018
**NHTSA/ODI ID:** 11104918
**SUMMARY:** THE CAR HAS ACCELERATION/SPEED PROBLEMS. IT TAKES TOO LONG TO ACCELERATE WHEN CHANGING LANES, PASSING OTHER VEHICLE, OR ENTERING FREEWAY. THIS ISSUE IS GOING ON ALL AND EVERY TIME I DRIVE IT. I PURCHASED THE CAR ONE MONTH AGO. THIS IS MY 5TH CAMRY AND I NEVER HAD THIS PROBLEM. CAR IS UNSAFE AND IM SCARED TO DRIVE. TOYOTA, DO SOMETHING BEFORE SOMEONE DIES!!!!!!!!!!. I ALMOST GOT REAR-ENDED COUPLE OF TIMES

x. **DATE OF INCIDENT:** June 7, 2018
**DATE COMPLAINT FILED:** June 15, 2018
**NHTSA/ODI ID:** 11102223
**SUMMARY:** 2018 CAMRY 8 SPEED AUTOMATIC TRANSMISSION HAS DOWNSHIFTING PROBLEMS. THIS INVOLVES A DELAY IN DOWNSHIFTING THAT I HAVE FOUND ON 3 OCCASIONS COULD HAVE BEEN DANGEROUS. UPON COMPLETING A TURN AND REAPPLYING GAS PEDAL THE CAR APPEARED TO BE IN NEUTRAL OR STUCK BETWEEN GEARS. I HAD A DEAD GAS PEDAL FOR 3 OR 4 SECONDS. ON 1 OCCASION I COULD HAVE BEEN INVOLVED IN A REAR END COLLISION IF THE OTHER DRIVER HADN'T REALIZED SOMETHING WAS WRONG AND SWERVED TO AVOID MY CAR. I CURRENTLY HAVE LEMON LAW COMPLAINT FILED WITH THE STATE ATTORNEY GENERALS OFFICE INVOLVING THIS CAR AND IT'S TRANSMISSION.

y. **DATE OF INCIDENT:** June 13, 2018
**DATE COMPLAINT FILED:** June 13, 2018
**NHTSA/ODI ID:** 11101557
**SUMMARY:** TOYOTA CAMRY XLE V6 HAS TRANSMISSION ISSUES. FIRST 5000 MI SERVICE HAS ALREADY BEEN COMPLETED. CAR CURRENTLY HAS ~8K MILES AND HAS NOT IMPROVED. (1) FIRST GEAR DOES NOT SHIFT SMOOTHLY TO SECOND. CAR JOLTS DURING THIS SHIFT. ISSUE IS WORSE WHEN THE CAR IS COLD, BUT CAN BE REPRODUCED EVEN

z. **DATE OF INCIDENT:** July 1, 2018
**DATE COMPLAINT FILED:** July 1, 2018
**NHTSA/ODI ID:** 11104946
**SUMMARY:** 4-CYLINDER XSE HAS SIGNIFICANT ACCELERATION DELAY AFTER DEPRESSING THE PEDAL; THIS IS ESPECIALLY APPARENT WHEN ACCELERATING FROM A ROLLING STOP AT APPROXIMATELY 15-25 MPH. OCCASIONALLY, THE GEAR WILL ALSO SHIFT ABRUPTLY WHEN ACCELERATING FROM 15-25 MPH, CAUSING THE CAR TO LURCH FORWARD SUDDENLY. THIS IS DANGEROUS; IF THERE IS A CAR IN FRONT OF YOU, THERE IS A HIGH CHANCE OF CAUSING A REAR END ACCIDENT.

aa. **DATE OF INCIDENT:** July 2, 2018
**DATE COMPLAINT FILED:** July 15, 2018
**NHTSA/ODI ID:** 11111444
**SUMMARY:** VEHICLE HAS ISSUES WITH TRANSMISSION. THERE ARE TIMES WHEN THE CAR CAN'T SEEM TO DECIDE WHAT GEAR TO PICK AND WHEN TO ENGAGE IT RESULTING IN A SECOND OR TWO OF DEAD ACCELERATION. ONCE VEHICLE DECIDES WHAT TO DO, IT SENDS AN EXCESSIVE AMOUNT OF POWER TO THE WHEELS WITH UNINTENDED ACCELERATION RATES. THIS MOST COMMONLY HAPPENS WHEN SLOWING FOR A YIELD AND THEN GOING, STOP AND GO TRAFFIC, AND PASSING ON THE HIGHWAY. FUEL ECONOMY IS ALL OVER THE PLACE AS WELL, MOST LIKELY DUE TO POOR TRANSMISSION.

THIS HAS BEEN AN ISSUE SINCE CAR WAS FIRST BOUGHT IN NOVEMBER 2017....HAS NEARLY 8000 MILES AS OF JULY 18 AND STILL AN ISSUE.

79. The existence of the 8AT Transmission Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiffs and other Class Members known of the 8AT Transmission Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

80. Reasonable consumers, like Plaintiffs, reasonably expect that a vehicle's Direct Shift-8AT Transmissions are safe, will function in a manner that will not pose a safety risk, and are free of defects. Plaintiffs and Class Members further reasonably expect that Toyota will not sell or lease vehicles with known safety defects, such as the 8AT Transmission Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Toyota to fail to disclose the 8AT Transmission Defect to them and to continually deny it.

**Toyota Has Actively Concealed the 8AT Transmission Defect**

81. Despite its knowledge of the 8AT Transmission Defect in the Class Vehicles, Toyota actively concealed the existence and nature of the defect from Plaintiffs and Class Members. Specifically, Toyota failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a) any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the Direct Shift-8AT Transmissions;

(b) that the Class Vehicles, including the Direct Shift-8AT Transmissions, were not in good in working order, were defective, and were not fit for their intended purposes; and

(c) that the Class Vehicles and the Direct Shift-8AT Transmissions were defective, despite the fact that Toyota learned of such defects as early as 2017.

**CLASS ACTION ALLEGATIONS**

82. Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

83. The Class and Sub-Class are defined as:

**Class**: All individuals in the United States who purchased or leased any of the following vehicles:

- 2018 to present Toyota Highlander
- 2018 to present Toyota Sienna
- 2018 to present Toyota Avalon
- 2018 to present Lexus ES 350
- 2018 to present Lexus RX 350
- 2018 to present Lexus GS 350

- **California Sub-Class**: All members of the Class who reside in the State of California.
- **Georgia Sub-Class**: All members of the Class who reside in the State of Georgia.
- **New York Sub-Class**: All members of the Class who reside in the State of New York.
- **CLRA Sub-Class**: All members of the Class who are "consumers" within the meaning of California Civil Code § 1761(d).
- **Implied Warranty Sub-Class**: All members of the Class who purchased or leased their vehicles in the State of California.

84. Excluded from the Class and Sub-Classes are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

85. Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

86. Typicality: Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle

designed, manufactured, and distributed by Toyota. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing the defective Transmissions. Furthermore, the factual bases of Toyota's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

87. Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

(a) Whether Class Vehicles suffer from defects relating to the Direct Shift-8AT Transmissions;

(b) Whether the defects relating to the Direct Shift-8AT Transmissions constitute an unreasonable safety risk;

(c) Whether Defendants knows about the defects pertaining to the Direct Shift-8AT Transmissions and, if so, how long Defendants has known of the defect;

(d) Whether the defective nature of the Direct Shift-8AT Transmissions constitutes a material fact;

(e) Whether Defendants has a duty to disclose the defective nature of the Direct Shift-8AT Transmissions to Plaintiffs and Class Members;

(f) Whether Plaintiffs and the other Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

(g) Whether Defendants knew or reasonably should have known of the defects pertaining to the Direct Shift-8AT

Transmissions before they sold and leased Class Vehicles to Class Members;

(h) Whether Defendants should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Direct Shift-8AT Transmissions;

(i) Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Direct Shift-8AT Transmissions;

(j) Whether Defendants breached the implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act;

(k) Whether Defendants breached the implied warranty of merchantability pursuant to the Song-Beverly Act;

(l) Whether Defendants breached their express warranties under UCC section 2301; and

(m) Whether Defendants breached written warranties pursuant to the Magnuson-Moss Warranty Act.

88. Adequate Representation: Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and he intends to prosecute this action vigorously.

89. Predominance and Superiority: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**

**(Violation of California's Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*.)**

90. Plaintiffs incorporates by reference the allegations contained in paragraphs 1 through 89, *supra*.

91. Plaintiff Morales brings this cause of action on behalf of themselves and the Class, or, alternatively, the CLRA Sub-Class.

92. Defendants are "persons" as defined by California Civil Code § 1761(c).

93. Plaintiff Morales and CLRA Sub-class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

94. By failing to disclose and concealing the defective nature of the Direct Shift-8AT Transmissions from Plaintiff Morales and prospective Class Members, Toyota violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their Direct Shift-8AT Transmissions had characteristics and benefits that they do not have and represented that the Class Vehicles and

their Direct Shift-8AT Transmissions were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

95. Toyota's unfair and deceptive acts or practices occurred repeatedly in Toyota's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

96. Toyota knew that the Class Vehicles and their Direct Shift-8AT Transmissions suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

97. Because of their reliance on Toyota's omissions, owners and/or lessees of the Class Vehicles, including Plaintiff Morales, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the 8AT Transmission Defect, Plaintiff Morales and Class Members were harmed and suffered actual damages in that the Class Vehicles' Direct Shift-8AT Transmissions are substantially certain to fail before their expected useful life has run.

98. Toyota was under a duty to Plaintiff Morales and Class Members to disclose the defective nature of the Direct Shift-8AT Transmissions and/or the associated repair costs because:

(a) Toyota was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Direct Shift-8AT Transmissions;

(b) Plaintiff Morales and Class Members could not reasonably have been expected to learn or discover that their Direct Shift-8AT Transmissions had a dangerous safety defect until it manifested; and

(c) Toyota knew that Plaintiff Morales and Class Members could not reasonably have been expected to learn of or discover the

safety defect.

99. In failing to disclose the defective nature of Direct Shift-8AT Transmissions, Toyota knowingly and intentionally concealed material facts and breached its duty not to do so.

100. The facts Toyota concealed from or failed to disclose to Plaintiff Morales and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had Plaintiff Morales and Class Members known that the Class Vehicles' Direct Shift-8AT Transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

101. Plaintiff Morales and Class Members are reasonable consumers who do not expect the Direct Shift-8AT Transmissions installed in their vehicles to exhibit problems such as the 8AT Transmission Defect. This is the reasonable and objective consumer expectation relating to a vehicle's Direct Shift-8AT Transmissions.

102. Because of Toyota's conduct, Plaintiff Morales and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and will continue to experience problems such as the 8AT Transmission Defect.

103. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff Morales and Class Members suffered and will continue to suffer actual damages.

104. Plaintiff Morales and the Class are entitled to equitable relief.

105. Plaintiff Morales provided Toyota with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a). If Toyota fails to provide appropriate relief for its violations of the CLRA within 30 days, Plaintiff

Morales will seek monetary, compensatory, and punitive damages.

## SECOND CAUSE OF ACTION

## (Violation of California Business & Professions Code § 17200, *et seq.*)

106. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

107. Plaintiff Morales brings this cause of action on behalf of himself and the Class, or, alternatively, on behalf of the California Sub-Class.

108. Because of their reliance on Toyota's omissions, owners and/or lessees of the Class Vehicles, including Plaintiff Morales, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the 8AT Transmission Defect, Plaintiff Morales and Class Members were harmed and suffered actual damages in that the Class Vehicles' Direct Shift-8AT Transmissions are substantially certain to fail before their expected useful life has run.

109. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

110. Plaintiff Morales and Class Members are reasonable consumers who do not expect their Direct Shift-8AT Transmissions to exhibit the symptoms of the 8AT Transmission Defect.

111. Toyota knew the Class Vehicles and their Direct Shift-8AT Transmissions were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

112. In failing to disclose the 8AT Transmission Defect, Toyota has knowingly and intentionally concealed material facts and breached its duty not to do so.

113. Toyota was under a duty to Plaintiff Morales and Class Members to

disclose the defective nature of the Class Vehicles and their Direct Shift-8AT Transmissions because:

(a) Toyota was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Direct Shift-8AT Transmissions; and

(b) Toyota actively concealed the defective nature of the Class Vehicles and their Direct Shift-8AT Transmissions from Plaintiff Morales and the Class.

114. The facts Toyota concealed from or failed to disclose to Plaintiff Morales and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had they known of the 8AT Transmission Defect, Plaintiff Morales and the other Class Members would have paid less for Class Vehicles equipped with the subject Direct Shift-8AT Transmissions or would not have purchased or leased them at all.

115. Toyota continued to conceal the defective nature of the Class Vehicles and their Direct Shift-8AT Transmissions even after Class Members began to report problems.

116. Toyota's conduct was and is likely to deceive consumers.

117. Toyota's acts, conduct, and practices were unlawful, in that they constituted:

(a) Violations of California's Consumers Legal Remedies Act;

(b) Violations of the Song-Beverly Consumer Warranty Act;

(c) Violations of the Magnuson-Moss Warranty Act; and

(d) Breach of Express Warranty under California Commercial Code section 2313.

118. By its conduct, Toyota has engaged in unfair competition and

unlawful, unfair, and fraudulent business practices.

119. Toyota's unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

120. As a direct and proximate result of Toyota's unfair and deceptive practices, Plaintiff Morales and Class Members have suffered and will continue to suffer actual damages.

121. Toyota has been unjustly enriched and should be required to make restitution to Plaintiff Morales and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

**THIRD CAUSE OF ACTION**

**(Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

122. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

123. Plaintiff Morales brings this cause of action against Defendants on behalf of himself and the Implied Warranty Sub-Class.

124. Toyota was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Toyota knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

125. Toyota provided Plaintiff Morales and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their Direct Shift-8AT Transmissions suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing

safe and reliable transportation.

126. Toyota impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Direct Shift-8AT Transmissions, which were manufactured, supplied, distributed, and/or sold by Toyota, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Direct Shift-8AT Transmissions would be fit for their intended use.

127. Contrary to the applicable implied warranties, the Class Vehicles and their Direct Shift-8AT Transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Morales and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective Direct Shift-8AT Transmissions.

128. The alleged 8AT Transmission Defect is inherent and was present in each Class Vehicle at the time of sale.

129. Because of Toyota's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the 8AT Transmission Defect, Plaintiff Morales and Class Members were harmed and suffered actual damages in that the Class Vehicles' Direct Shift-8AT Transmissions are substantially certain to fail before their expected useful life has run.

130. Toyota's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**FOURTH CAUSE OF ACTION**

**(For Breach of Express Warranty)**

131. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

132. Plaintiff Morales brings this cause of action on behalf of himself and on behalf of the Class, or, alternatively the California Sub-class, against TMS.

133. TMS provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, TMS's express warranty is an express warranty under California law.

134. The Direct Shift-8AT Transmissions were manufactured and/or installed in the Class Vehicles by TMS and are covered by the express warranty.

135. In a section entitled "What is Covered," TMS's express warranty provides in relevant part that "This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota." Likewise, TMS's Powertrain Warranty provides in relevant part that "This warranty covers repairs needed to correct defects in materials or workmanship of any component listed below and in the next column and supplied by Toyota." The "transmission and transaxle" are among the parts covered by the Powertrain Warranty."

136. According to TMS, the Basic Warranty coverage for Toyota models "is for 36 months or 36,000 miles, whichever occurs first…" The Powertrain warranty coverage "is for 60 months or 60,000 miles, whichever occurs first." Further, the Basic Warranty coverage for Lexus models "is for 48 months or 50,000 miles, whichever occurs first…" The Powertrain warranty coverage "is for 72 months or 70,000 miles, whichever occurs first."

137. TMS breached the express warranties by selling and leasing Class

Vehicles with Direct Shift-8AT Transmissions that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Direct Shift-8AT Transmissions. In addition, when TMS did agree to pay a portion of the costs, TMS nevertheless breached the express warranty by simply replacing Plaintiffs' and Class Members' defective Direct Shift-8AT Transmissions with similarly defective Direct Shift-8AT Transmissions, thus failing to "repair" the defect.

138. Plaintiff Morales was not required to notify TMS of the breach or were not required to do so because affording TMS a reasonable opportunity to cure its breach of written warranty would have been futile. TMS was also on notice of the defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the Direct Shift-8AT Transmissions, and from other internal sources.

139. As a direct and proximate cause of TMS's breach, Plaintiff Morales and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff Morales and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

140. Plaintiff Morales and the other Class Members are entitled to legal and equitable relief against TMS, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**FIFTH CAUSE OF ACTION**

**(Breach of Written Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq*.)**

141. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

142. Plaintiffs bring this cause of action on behalf of themselves and the Class against TMS.

143. The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

144. Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

145. TMS is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

146. TMS's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

147. As set forth *supra* and incorporated by reference, TMS provided a 36-month, 36,000-mile Basic Warranty, and a 60 month, 60,000 mile Powertrain Warranty for Toyota models and a 48-month, 50,000-mile Basic Warranty, and a 72 month, 70,000 mile Powertrain Warranty for Lexus models.

148. TMS breached the express warranties by selling and leasing Class Vehicles with Direct Shift-8AT Transmissions that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Direct Shift-8AT Transmissions. In addition, when TMS did agree to pay a portion of the costs, Toyota nevertheless breached the express warranty by simply replacing Plaintiffs' and Class Members' defective Direct Shift-8AT Transmissions with similarly defective Direct Shift-8AT Transmissions, thus failing to "repair" the defect.

149. TMS's breach of the express warranties has deprived the Plaintiffs and Class members of the benefit of their bargain.

150. TMS's breach of express warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

151. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

152. TMS has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the Direct Shift-8AT Transmissions.

153. As a direct and proximate cause of TMS's breach of written warranties, Plaintiffs and Class Members sustained and incurred damages and other losses in an amount to be determined at trial. TMS's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

**SIXTH CAUSE OF ACTION**

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)**

154. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

155. Plaintiffs bring this cause of action on behalf of themselves and the Class against TMS.

156. The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

157. Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

158. TMS is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

159. TMS impliedly warranted that the Class Vehicles were of

merchantable quality and fit for use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Direct Shift-8AT Transmissions were manufactured, supplied, distributed, and/or sold by Toyota would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Direct Shift-8AT Transmissions would be fit for their intended use while the Class Vehicles were being operated.

160. Contrary to the applicable implied warranties, the Class Vehicles and their Direct Shift-8AT Transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective design of their Direct Shift-8AT Transmissions.

161. TMS's breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

162. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

163. TMS has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the Direct Shift-8AT Transmissions.

164. As a direct and proximate cause of TMS's breach of implied warranties, Plaintiffs and Class Members sustained and incurred damages and other losses in an amount to be determined at trial. TMS's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

165. Because of TMS's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

**SEVENTH CAUSE OF ACTION**

**(Violation of the Georgia Uniform Deceptive Trade Practices Act Ga. Code Ann. § 10-1-370, et seq.)**

166. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

167. Plaintiff Robinson Bertrand brings this cause of action on his own behalf and on behalf of the members of the Georgia Sub-Class.

168. Toyota, Plaintiff Bertrand, and the Georgia Sub-Class Members are "persons" within the meaning of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

169. The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).

170. Toyota participated in unfair or deceptive trade practices that violated the Georgia UDTPA as described below and alleged throughout the Complaint. By failing to disclose the 8AT Transmission Defect and by concealing the 8AT Transmission Defect, Toyota knowingly concealed and omitted material facts in connection with the sale or lease of the Class Vehicles. Toyota systematically, concealed, suppressed, or omitted material facts relating to the Class Vehicles and 8AT Transmission Defect in the course of its business.

171. Toyota also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

172. Toyota's unfair and deceptive acts or practices occurred repeatedly in Toyota's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

173. Toyota knew that the Class Vehicles and their Direct Shift-8AT Transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

174. Toyota knew or should have known that its conduct violated the Georgia UDTPA.

175. Plaintiff Bertrand and the Georgia Sub-Class Members reasonably relied on Toyota's omissions of material facts in purchasing their Class Vehicles.

176. Had Plaintiff Bertrand and the Georgia Sub-Class Members known that the Class Vehicles would exhibit the 8AT Transmission Defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiff and the Georgia Class Members did not receive the benefit of their bargain as a result of Toyota's misconduct.

177. Plaintiff Bertrand and the Georgia Sub-Class Members suffered injury in fact to a legally protected interest. As a result of Toyota's conduct, Plaintiff Bertrand and the Georgia Sub-Class Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

178. As a result of TMS's conduct, Plaintiff Bertrand and the Georgia Sub-Class Members were harmed and suffered actual damages as a result of Toyota's omissions with regard to their Class Vehicles' Direct Shift-8AT Transmissions because they purchased vehicles which do not perform as advertised.

179. As a direct and proximate result of Toyota's unfair or deceptive acts or practices, Plaintiff Bertrand and the Georgia Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

180. Plaintiff Bertrand and the Georgia Sub-Class Members seek an order enjoining Toyota's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the under the Georgia UDTPA.

**EIGHTH CAUSE OF ACTION**

**(Breach of the Implied Warranty of Merchantability**

**Ga. Code. Ann. §§ 11-2-314 and 11-2A-212.)**

181. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

182. Plaintiff Bertrand brings this cause of action on his own behalf and on behalf of the members of the Georgia Sub-Class against TMS.

183. TMS is and was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

184. With respect to leases, TMS is and was at all relevant times a "lessor" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

185. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

186. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Ga. Code. Ann. §§ 11-2-314 and 11-2A-212.

187. TMS knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. TMS directly sold and marketed vehicles equipped with the Direct Shift-8AT transmissions to customers through authorized dealers, like those from whom Plaintiff Bertrand and the Georgia Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. TMS knew that the Class Vehicles would

and did pass unchanged from the authorized dealers to Plaintiff Bertrand and the Georgia Sub-Class Members, with no modification to the defective transmissions.

188. TMS provided Plaintiff Bertrand and the Georgia Sub-Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

189. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by TMS were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

190. Contrary to the applicable implied warranties, the Class Vehicles and their Direct Shift-8AT at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their transmissions and the existence of the 8AT Transmission Defect at the time of sale or lease and thereafter. TMS knew of this defect at the time these sale or lease transactions occurred.

191. As a result of TMS's breach of the applicable implied warranties, Plaintiff Bertrand and the Georgia Sub-Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the 8AT Transmission Defect, Plaintiff Bertrand and the Georgia Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

192. TMS's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of under Ga. Code. Ann. §§ 11-2-314 and 11-2A-212.

193. Plaintiff Bertrand and the Georgia Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of TMS's conduct described herein.

194. Plaintiff Bertrand and the Georgia Sub-Class Members were not required to notify TMS of the breach because affording TMS a reasonable opportunity to cure its breach of written warranty would have been futile. TMS was also on notice of the 8AT Transmission Defect from the complaints and service requests it received from Plaintiff Bertrand and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

195. As a direct and proximate cause of TMS's breach, Plaintiff Bertrand and the Georgia Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiff Bertrand and the Georgia Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

196. As a direct and proximate result of TMS's breach of the implied warranty of merchantability, Plaintiff Bertrand and the Georgia Sub-Class Members have been damaged in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**

**(Breach of Express Warranty**

**Ga. Code. Ann. §§ 11-2-313 and 11-2A-210)**

197. Plaintiffs incorporate by reference the allegations contained in

paragraphs 1 through 89, *supra*.

198. Plaintiff Bertrand brings this cause of action on his own behalf and on behalf of the members of the Georgia Sub-Class against TMS.

199. TMS is and was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

200. With respect to leases, TMS is and was at all relevant times a "lessor" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

201. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

202. TMS provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

203. As set forth *supra* and incorporated by reference, TMS provided a 36-month, 36,000-mile Basic Warranty, and a 60 month, 60,000 mile Powertrain Warranty to the Class for Toyota models and a 48-month, 50,000-mile Basic Warranty, and a 72 month, 70,000 mile Powertrain Warranty for Lexus models.

204. TMS manufactured and/or installed the Direct Shift-8AT Transmissions and their component parts in the Class Vehicles, and the Direct Shift-8AT Transmissions and their component parts are covered by the express Warranties.

205. The 8AT Transmission Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Plaintiff Bertrand and the Georgia Sub-Class Members.

206. Plaintiff Bertrand and the Georgia Sub-Class Members relied on TMS's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

207. Under the express Warranties, TMS was obligated to correct the 8AT Transmission Defect in the vehicles owned or leased by Plaintiff Bertrand and the Georgia Sub-Class Members.

208. Although TMS was obligated to correct the 8AT Transmission Defect, none of the attempted fixes to the transmissions are adequate under the terms of the Warranties, as they did not cure the defect.

209. TMS breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, TMS falsely informed Georgia Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures including software updates, and/or replaced defective components in the Direct Shift-8AT Transmissions with equally defective components, without actually repairing the Class Vehicles.

210. TMS and its agent dealers have failed and refused to conform the Direct Shift-8AT Transmissions to the express Warranties. TMS's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

211. Moreover, TMS's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, TMS's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

212. The time limits contained in TMS's warranty period were also unconscionable and inadequate to protect Plaintiff Bertrand and the Georgia Sub-Class Members. Among other things, Plaintiff Bertrand and the Georgia Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored TMS. A gross disparity in

bargaining power existed between TMS and the Class members, and TMS knew or should have known that the Class Vehicles were defective at the time of sale.

213. Plaintiff Bertrand and the Georgia Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of TMS's conduct described herein.

214. Plaintiff Bertrand and the Georgia Sub-Class Members were not required to notify TMS of the breach because affording TMS a reasonable opportunity to cure its breach of written warranty would have been futile. TMS was also on notice of the 8AT Transmission Defect from the complaints and service requests it received from Plaintiff Bertrand and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

215. Because TMS, through its conduct and exemplified by its own service bulletins, has covered repairs of the 8AT Transmission Defect if TMS determines the repairs are appropriately covered under the Warranties, TMS cannot now deny that the Warranties cover the 8AT Transmission Defect.

216. Because TMS has not been able remedy the 8AT Transmission Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

217. As a direct and proximate cause of TMS's breach, Plaintiff Bertrand and the Georgia Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiff Bertrand and the Georgia Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

218. As a direct and proximate result of TMS's breach of express

warranties, Georgia Plaintiffs and the Georgia Sub-Class Members have been damaged in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**

**(Violation of New York General Business Law**

**§§ 349, 350, et seq.**

219. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

220. Plaintiff Rosalie Quinones brings this Count on behalf of herself and members of the New York Sub-Class.

221. New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

222. New York's General Business Law § 350 also makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity…." N.Y. Gen. Bus. Law § 350-a.

223. Toyota's omissions, as alleged above, were and are material to a reasonable consumer and are likely to affect consumer behavior and conduct.

224. Toyota's act and practices offended public policy and violate numerous state and federal laws.

225. Toyota's intentional deception of consumers was immoral, unethical, oppressive, and unscrupulous.

226. Toyota's conduct has caused and continues to cause substantial injury to Plaintiff Quinones, New York consumers, and others because, as

alleged above, consumers paid a premium for Class Vehicles based on omissions about their efficiency, functionality, safety and performance. That injury is not outweighed by any countervailing public policy that could justify Toyota's deceptive practices.

227. Because Plaintiff Quinones and other members of the New York Sub-Class reasonably relied on Defendant's omissions about the Vehicles, they could not have reasonably avoided that injury.

228. Defendant's conduct has not resulted in any benefit to consumers or competition.

229. Defendant's unfair, deceptive practices and false advertising directly, foreseeably, and proximately caused Plaintiff Quinones and other members of the New York Sub-Class an ascertainable loss because those consumers paid a premium for what they thought were efficient, smooth performing, durable, operable, safe vehicles.

## ELEVENTH CAUSE OF ACTION

## (Breach of Implied Warranty (New York))

230. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

231. Plaintiff Rosalie Quinones brings this Count on behalf of herself and members of the New York Sub-Class.

232. Toyota impliedly warranted that the Class Vehicles were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings.

233. Because the class vehicles are equipped with a defective Direct Shift-8AT Transmission, the vehicles purchased or leased and used by Plaintiff Quinones and the New York Sub-Class are unsafe, unfit for their ordinary use when sold, and not merchantable. Toyota breached the implied warranty of

merchantability, as stated in the Uniform Commercial Code, by selling or leasing class vehicles to Plaintiff Quinones and the New York Sub-Class.

234. Plaintiff Quinones and the New York Sub-Class seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, restitution, the repair or replacement of all class vehicles, the refund of money paid to own or lease all class vehicles, and appropriate equitable relief including injunctive relief, a declaratory judgment, and a court order enjoining Toyota's wrongful acts and practices and any other relief to which Plaintiff Quinones and the New York Sub-Class may be entitled.

**TWELFTH CAUSE OF ACTION**

**(Breach of Express Warranty (New York))**

235. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

236. Plaintiff Rosalie Quinones brings this Count on behalf of herself and members of the New York Sub-Class.

237. As set forth *supra* and incorporated by reference, TMS provided a 36-month, 36,000-mile Basic Warranty, and a 60-month, 60,000 mile Powertrain Warranty for Toyota models and a 48-month, 50,000-mile Basic Warranty, and a 72 month, 70,000 mile Powertrain Warranty for Lexus models.

238. Through its personnel, whose responsibilities include monitoring defects, analyzing warranty and field data, and reporting findings to executive management, as well as through its highly developed internal information and reporting systems, TMS has been made aware of the defective Direct Shift-8AT Transmission, but failed to notify Plaintiff Quinones and the New York Sub-Class Members during the warranty period and failed to repair the defect free of charge.

239. Plaintiff Quinones and the New York Sub-Class Members also gave

notice to TMS of their vehicles' defect through its dealer and agent and through its customer service division and gave TMS a chance to repair the defect under the express warranty. TMS was also on notice of the defect by virtue of the NHTSA and other complaints set forth herein.

240. TMS breached its warranties by offering for sale and selling defective vehicles that were by construction defective and unsafe and refusing to recognize or permanently repair the defect, thereby subjecting the occupants of the class vehicles purchased or leased to damages and risks of loss and injury.

241. TMS's warranty to repair the class vehicles fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Quinones and the New York Sub-Class Members whole because TMS has been unable to repair the defect or has refused to replace the transmission with a different, functional transmission.

242. Accordingly, Plaintiff Quinones and the New York Sub-Class Members are not limited to the limited warranty of "repair" and Plaintiff Quinones and the New York Sub-Class Members seek all remedies allowed by law.

243. Plaintiff Quinones and the New York Sub-Class Members seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, restitution, the repair or replacement of all class vehicles, the refund of money paid to own or lease all class, and appropriate equitable relief including injunctive relief, a declaratory judgment, and a court order enjoining TMS's wrongful acts and practices, and any other relief to which Plaintiff Quinones and the New York Sub-Class Members may be entitled.

## THIRTEENTH CAUSE OF ACTION

## (For Unjust Enrichment)

244. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, *supra*.

245. Plaintiffs bring this cause of action on behalf of themselves and the Class.

246. As a direct and proximate result of Toyota's failure to disclose known defects, Toyota has profited through the sale and lease of the Class Vehicles. Although these vehicles are purchased through Toyota's agents, the money from the vehicle sales flows directly back to Toyota.

247. Additionally, as a direct and proximate result of Toyota's failure to disclose known defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Toyota.

248. Toyota has been unjustly enriched due to the known defects in the Class Vehicles through the use money paid that earned interest or otherwise added to Toyota's profits when said money should have remained with Plaintiffs and Class Members.

249. As a result of the Toyota's unjust enrichment, Plaintiffs and Class Members have suffered damages.

## RELIEF REQUESTED

250. Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

(a) An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

(a) A declaration that Defendants are financially responsible for

notifying all Class Members about the defective nature of the Direct Shift-8AT Transmissions, including the need for periodic maintenance;

(b) An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to remove, repair, and/or replace the Class Vehicles' defective Direct Shift-8AT Transmissions with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling TMS to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(c) A declaration requiring Defendants to comply with the various provisions of the Song-Beverly Act alleged herein and to make all the required disclosures;

(d) An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial, except that currently, Plaintiff Morales does not seek damages under his Consumers Legal Remedies Act claim;

(e) Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

(f) Any and all remedies provided pursuant to the Magnuson-

Moss Warranty Act;

(g) A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class Members;

(h) An award of attorneys' fees and costs, as allowed by law;

(i) An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

(j) An award of pre-judgment and post-judgment interest, as provided by law;

(k) Leave to amend the Complaint to conform to the evidence produced at trial; and

(l) Such other relief as may be appropriate under the circumstances.

///

///

///

## DEMAND FOR JURY TRIAL

251. Pursuant to Federal Rule of Civil Procedure 38(b) and Central District of California Local Rule 38-1, Plaintiffs demand a trial by jury of all issues in this action so triable.

Dated: August 22, 2019

Respectfully submitted,

Capstone Law APC

By: /s/ Mark A. Ozzello

Mark A. Ozzello
Tarek H. Zohdy
Cody R. Padgett
Trisha K. Monesi

BERGER & MONTAGUE, P.C.
Russell D. Paul (*Pro Hac Vice App. Forthcoming)*
Amey J. Park (*Pro Hac Vice App. Forthcoming)*
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rpaul@bm.net

Attorneys for Plaintiffs

# EXHIBIT 1



Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

BERGER & MONTAGUE, P.C.
Russell D. Paul (Pro Hac Vice App. Forthcoming)
Amey J. Park (Pro Hac Vice App. Forthcoming)
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rpaul@bm.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL MORALES, ROBINSON BERTRAND, and ROSALIE QUINONES, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California corporation, TOYOTA MOTOR NORTH AMERICA, INC., a California corporation, and TOYOTA MOTOR CORPORATION, a Japanese corporation,<br><br>Defendants. | Case No.:<br><br>**DECLARATION OF RAUL MORALES IN SUPPORT OF VENUE FOR CLASS ACTION COMPLAINT PURSUANT TO CIVIL CODE SECTION 1780(d)** |

## DECLARATION OF RAUL MORALES

I, Raul Morales, declare under penalty of perjury as follows:

1. I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true. I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2. Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's California Consumers Legal Remedies Act claim.

3. I am a resident of Temecula, California, in Riverside County. I leased and service my vehicle in Riverside County, and I keep my vehicle at my home in Temecula.

4. Based on the facts set forth herein, the Central District of California is a proper venue for the prosecution of my California Consumers Legal Remedies Act claim because the vehicle that is the subject of this lawsuit is situated here and a substantial portion of the events giving rise to my claims occurred here. Further, Defendants conduct business in the Central District of California.

5. I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed on August 8/22/2019, 2019 in Temecula, California.

DocuSigned by:
D2A84B4BB7EB47C...

Raul Morales