**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Raul Morales,

        Plaintiff,

        v.

Toyota Motor Sales, U.S.A., Inc. et al.,

        Defendants.

5:19-cv-01611-VAP-ADSx

**Order DENYING Defendants'
Motion to Dismiss
(Dkt. 61)**

      Before the Court is Defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor North America, Inc., and Toyota Motor Corporation's (collectively, "Defendants" or "Toyota") Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 61-1, "Motion").  After considering all the papers filed in support of, and in opposition to, the Motion, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15.  The Court DENIES the Motion.

## I.  BACKGROUND

**A.  Initiation of Lawsuit and First Amended Complaint**

      On August 22, 2019, Plaintiff initiated this consumer class action lawsuit alleging a transmission defect in her new 2019 Lexus RX 350.  (Dkt. 1).  Plaintiff leased her vehicle in or around March 8, 2019 from an authorized Lexus dealer in Long Island, New York.  (*Id.*).

1

United States District Court
Central District of California

On November 12, 2019, Plaintiff filed a First Amended Complaint ("FAC").  (Dkt. 39).  Plaintiff claimed that since the beginning of her lease, her vehicle exhibited "pulling, lurching, and jerking on acceleration and sudden unintended acceleration without pressing the gas."  (*Id.*, ¶ 30).  Plaintiff claimed that Toyota's UA80 transmission was defective, causing "harsh or delayed shifting and engagement, delayed acceleration, hesitation, jerking, shuddering, unintended acceleration, lurching, excessive revving before upshifting (also known as excessively high RPM shift points), lack of power when needed (such as from a stop) and loss of power" in the class vehicles.  (*Id.*, ¶ 5).  The class vehicles consisted of the Toyota Highlander, the Toyota Sienna, the Toyota Avalon, the Lexus ES 350, the 2018 to present Lexus RX 350, the 2018 to present Lexus GS 350, and the 2019 Rav4.  (*Id.*).

Plaintiff claimed that the defect was due to a faulty calibration of the Power Control Module ("PCM").  (*Id.*).  In support of this argument, Plaintiff cited six technical service bulletins ("TSBs") that Toyota issued to its network of dealerships.  (*Id.*, ¶¶ 65-70).  Those TSBs listed various conditions that were present in different Toyota vehicles and were attributed to a faulty calibration of the PCM.  (*Id.*).  Plaintiff also cited to the "Customer Support Program ZJC" Toyota issued on April 18, 2019, in which Toyota allegedly agreed to "provide additional warranty coverage for the UA80 transmission on 2017-2018 Model Year Toyota Sienna and Highlander vehicles for damage caused by an insufficiently bent washer tab within the transmission" as evidence of an alleged transmission defect.  (*Id.*, ¶ 71).  Finally, Plaintiff cited consumer complaints to the National Highway Safety Administration

and other websites describing the automatic transmission issues Plaintiff complained of.  (*Id.*, ¶¶ 75-77).

**B.     Defendants' Motion to Dismiss the FAC**

On January 13, 2020, Defendants moved to dismiss Plaintiff's FAC. (Dkt. 42).  On April 27, 2020, the Court granted the Motion to Dismiss with leave to amend.  (Dkt. 49).  The Court ruled that Plaintiff's allegations failed to allege a transmission defect for two reasons: (1) Plaintiff failed to allege factual allegations to support Plaintiff's assertion that all of the purported class vehicles contained the same defective transmission system; and (2) the TSBs Plaintiff relied on addressed a broad range of issues that applied to different models and different car components – notably, Plaintiff failed to a cite a single TSB or Customer Support Program that applied to her Lexus RX 350.  (*Id.*, at 8-10).  The Court thus held that Plaintiff failed to allege sufficient factual information to support a plausible inference that her Lexus' transmission issues were due to a faulty calibration of the PCM.

**C.     Third Amended Complaint**

Now before the Court is Plaintiff's Third Amended Complaint ("TAC"), filed on July 10, 2020.  (Dkt. 59).[1]  In the TAC, Plaintiff claims that she fixed the issues addressed in the Court's April 27 Order dismissing the FAC.

Plaintiff's TAC is limited to claims that pertain only to her vehicle, the Lexus RX 350.  (*Id.*).  According to Plaintiff, the RX 350 vehicles are

---

[1] Plaintiff filed a Second Amended Complaint ("SAC") on May 18, 2020. (Dkt. 52).

United States District Court
Central District of California

equipped with the same transmission system, the Toyota 8-Speed ECT Transmission ("Transmission" or "8-Speed Transmission").  (*Id.*).  Plaintiff claims that the 8-Speed Transmission is defective in its design because it "causes harsh or delayed shifting and engagement, delayed acceleration, hesitation, jerking, unintended acceleration, lurching, excessive revving before upshifting (also known as excessively high RPM shift points), and lack of power when needed (such as from a stop)…"  (*Id.*).  Plaintiff reasserts her claim that since the beginning of her lease, her vehicle exhibited "pulling, lurching and jerking on acceleration and sudden unintended, acceleration without pressing the gas."  (*Id.*, ¶ 20).  Plaintiff adds a new claim that her vehicle also exhibited "jerk[ing] when shifting from park to drive."  (*Id.*).

According to Plaintiff, "improper calibration between the PCM and transmission prevents the valve body from applying appropriate timed pressure, [which in turn] causes the symptoms of 'shift shock' and delays before engagement of gears, as well as other symptoms of the 8-Speed Transmission Defect."  (*Id.*, ¶ 43).

Plaintiff claims that since 2016 or earlier Toyota knew about the 8-Speed Transmission defect through sources not available to consumers, including through "pre-release testing data, early consumer complaints to Toyota and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from Toyota dealers about the problem."  (*Id.*, ¶ 48).

United States District Court
Central District of California

In support of this argument Plaintiff again relies on Toyota's TSBs issued to its dealerships.  According to Plaintiff, "[t]hrough TSBs, Toyota provides directions to its authorized dealerships for how to respond to customer complaints and requests for repairs."  (*Id.*, ¶ 52).

Plaintiff cites three new TSBs in the TAC that allegedly apply to the Lexus RX 350.  (*Id.*, ¶ 53-58).[2]  The first TSB, issued on February 8, 2017, applies to the 2016 to 2017 Lexus RX 350 ("TSB 1").  (*Id.*, ¶ 53-54).  The second TSB, issued on February 8, 2019, applies to the 2019 RX 350 ("TSB 2").  (*Id.*, ¶ 55).  The third TSB, issued July 2, 2019, applies to the 2016-2019 RX 350 ("TSB 3").  (*Id.*, ¶ 56).  Plaintiff also claims that TSB 3 is the TSB that the dealership used when Plaintiff brought her vehicle to the dealer for repairs.  (*Id.*).  Plaintiff also cites other non-RX 350 vehicle TSBs to demonstrate Toyota's pre-sale knowledge.  (*Id.*, ¶¶ 59-73).

Moreover, Plaintiff cites consumer complaints to the National Highway Traffic Safety Administration ("NHTSA") and other websites describing the automatic transmission issues Plaintiff complains of, including hard gear shifting, reduced or excessive power, jerking, shaking, and engine revving associated with delayed acceleration.  (*Id.* ¶¶ 59-71).  Plaintiff asserts the alleged defect in Defendants' automatic transmission system and the

---

[2] Defendants filed a request for judicial notice on July 24, 2020, asking the Court to take notice of Defendants' New Vehicle Limited Warranty relating to Plaintiff's 2019 Lexus RX 350. (Dkt. 62).  Plaintiff has not objected to Defendants' request for judicial notice and so the Court GRANTS the request.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies.").

resulting harsh shifting, inconsistent acceleration, and jerking have decreased the value of her vehicle.  (*Id.*).  Plaintiff also alleges the defect in the transmission system "presents a serious safety concern" because, for example, "delayed and unintended acceleration . . . can make it difficult [for drivers] to safely merge into traffic or to turn left across incoming traffic."  (*Id.* ¶ 45).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a plaintiff to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2)).); *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them— as true and construe them in the light most favorable to the non-moving party. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). "The court need not

accept as true, however, allegations that contradict facts that may be judicially noticed by the court." *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Ninth Circuit has clarified that: (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

Cir. 2011).  Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

**B.   Heightened Pleading Standard Under Rule 9(b)**

A party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  Rule 9(b) requires a plaintiff to make more specific allegations so a defendant "can defend against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1024 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)); *see also Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993).

### III.   DISCUSSION

**A.   Plaintiff Alleges a Transmission Defect in the Lexus RX 350**

Defendants argue that Plaintiff's defect theory remains vague and implausible despite Plaintiff's new allegations.  Specifically, Defendants argue that even though Plaintiff has now cited three service bulletins that apply to the Lexus RX 350, they are either inapplicable to Plaintiff's own vehicle or to the alleged transmission defect.  (Dkt. 61-1, at 6-7).

In support of this theory, Defendants argue three points: (1) two of the three newly-added service bulletins do not apply to the transmission at all

because they are labeled with the phrases "Engine/Hybrid System" and "Engine Control—not the transmission" or do not apply to the 2019 Lexus RX 350; (2) the one service bulletin that does apply to the automatic transmission of a 2019 Lexus RX 350 describes symptoms inconsistent with the majority of Plaintiff's Complaint; and (3) Plaintiff continues to cite TSBs and Customer Support Programs related to other vehicles with different transmissions.  (*Id.*).

The Court disagrees in part, and therefore holds that Plaintiff has alleged sufficient facts to state a transmission defect at this stage in the proceedings.

1.    Plaintiff Fails to Allege that TSB 3 is Transmission Related

Plaintiff has not alleged sufficient factual information to support an inference that TSB 3 is transmission related.[3]  That TSB plainly states that it applies to "Engine Control" and "Engine/Hybrid System" as opposed to "Drivetrain" and "Automatic Transmission/Transaxle."  Indeed, TSB 2, in contrast, plainly states that it applies to "Automatic Transmission."

Plaintiff has failed to proffer a reasonable explanation as to why a TSB that lacks an Automatic Transmission label nonetheless applies to the automatic transmission.[4]  The only response Plaintiff provides is that the

---

[3] The Court agrees with Defendants that TSB 1 is inapplicable because it applies to 2016-2017 Lexus RX 350 only.

[4] The Court notes that unlike Plaintiff here, the Plaintiffs in *Loo* primarily relied on a TSB that was labeled "Automatic Transmission/Transaxle" and

United States District Court
Central District of California

United States District Court
Central District of California

"bucking feeling (back and forth jerking that comes right after a shift but then dissipates quickly after 1 – 2 and/or 2—3 upshifts)" is really a transmission issue because it refers to the functioning of the transmission.  (Dkt. 66, at 5).  Such explanation is conclusory and does not move Plaintiff's claim from merely possible to plausible.

While TSB 3 references the transmission shift, it does not address an issue with the transmission shifting process itself.  (*See* Dkt. 59-3) (referring to a "bucking feeling … that comes *right after a shift*…" and a surge feeling "*that is not associated with transmission shifts*…").  Thus, while the term "shift" and "transmission" are used in TSB 3, the language does not support an inference that TSB 3 is concerned with issues related to the transmission.  In contrast, TSB 2 is labeled "Automatic Transmission/Transaxle" and explains the transmission condition as "harsh engagement *when shifting into Drive*."  (Dkt. 59-2).  Further, the TSB relied on by the Plaintiffs in *Loo* was labeled "Automatic Transmission/Transaxle" and stated that the transmission condition was a "shift shock *when shifting from Park to Reverse*…"  (Dkt. 17-2).   This evidence coupled with the fact that TSB 3 is described as an "Engine Control" bulletin, makes Plaintiff's argument that the TSB is really transmission related implausible.

Plaintiff's argument about the PCM being interchangeable with the ECM is also unavailing because the PCM does not always involve the transmission.  As evidenced in Plaintiff's own exhibits, TSB 2, the ECM/PCM

_____

that listed the very symptoms they complained of.  *See* No. 8:19-cv-00750 VAP(ADSx), Dkt. 17-2.

1  can apply to the "Automatic Transmission/Transaxle" *or* the "Engine

2  Control." (Dkts. 59-3, 59-2). In other words, while ECM is synonymous with

3  PCM, it does not mean that Engine Control issues are synonymous with

4  Transmission Control Issues, and Plaintiff has failed to create a plausible

5  inference supporting such an argument.

6

7      2.    Plaintiff Alleges That TSB 2 Applies to Plaintiff's Claims

8      Despite Plaintiff's failure to connect her vehicle's alleged transmission

9  issues with TSB 3, Plaintiff has adequately alleged that TSB 2, the TSB that

10  Defendants admit is transmission related, applies to Plaintiff's claims.

11

12      Plaintiff alleges that since the beginning of her lease, her vehicle "has

13  exhibited pulling, lurching and jerking on acceleration and sudden

14  unintended acceleration without pressing the gas. The vehicle also jerks

15  when shifting from park to drive." (Dkt. 59, at 4). TSB 2 states that "[s]ome

16  2019 model year RX350 vehicles may exhibit a MIL ON condition with

17  Diagnostic Trouble Code … and/or harsh engagement when shifting into

18  Drive." (Dkt. 59-2). TSB 2 further attributes this condition to an issue with

19  the PCM. (*See id.*) ("The Engine Control Module (ECM) (SAE term:

20  Powertrain Control Module/PCM) logic has been updated to prevent this

21  condition.").

22

23      Defendants argue that TSB 2 nonetheless does not apply to the

24  majority of Plaintiff's complaints and the Court must disregard Plaintiff's new

25  allegation that her vehicle "also jerks when shifting from park to drive"

26  because it is contradicted by the rest of the TAC, Plaintiff's previous

United States District Court
Central District of California

pleadings, and [her] repair order at the dealer" which focus on issues
Plaintiff experienced *while driving*.  (Dkt. 61-1, at 7-8; Dkt. 67, at 8)
(emphasis added).

The Court agrees that TSB 2 does not support Plaintiff's clams about
symptoms occurring while the vehicle was driven.  Nevertheless,
Defendants fail to cite any authority supporting their argument that the Court
must disregard Plaintiff's new allegation that her vehicle "jerks when shifting
from park to drive" – a condition that Defendants admit is present in TSB 2.

To the contrary, the Ninth Circuit has held that a "district court has no
free-standing authority to strike pleadings simply because it believes that a
party has taken inconsistent positions in the litigation … there is nothing in
the Federal Rules of Civil Procedure to prevent a party from filing
successive pleadings that make inconsistent or even contradictory
allegations. Unless there is a showing that the party acted in bad faith—a
showing that can only be made after the party is given an opportunity to
respond under the procedures of Rule 11—inconsistent allegations are
simply not a basis for striking the pleading."  *See Steward v. Pfeiffer*, 2020
U.S. App. LEXIS 29738, *2 (9th Cir. 2020) (citing to *PAE Government
Services, Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007)); *see also Singh v.
Pooni*, No. 2:14-CV-02146 JAM, 2015 WL 4530686, at *4 (E.D. Cal. July 27,
2015).

Furthermore, Plaintiff's new allegation that her vehicle "jerks when
shifting from park to drive" is not inconsistent with her former pleadings or

the rest of the TAC.  Rather, it provides additional context to Plaintiff's claims.  Plaintiff has not alleged in any of her former complaints that the symptoms listed were the only ones she experienced, or that she never experienced issues when shifting from park to drive.  Thus, the additional allegation is not a contradiction.  Indeed, each of Plaintiff's complaints stated that the transmission defect caused, among other things, "harsh or delayed shifting and engagement."  (Dkts. 59, ¶ 6; 39, ¶ 5; 52, ¶ 6).  Further, Plaintiff has always stated that she experienced "jerking" in her vehicle, which Plaintiff now explains means "harsh engagement when shifting into gear" in the TAC.  (*See* Dkt. 5, ¶ 55) ("Consumers often describe harsh engagement when shifting into gear as 'jerking' or 'jerking into gear.'").  Thus, absent a finding a bad faith, the Court refuses to disregard Plaintiff's new allegation.

The Court therefore concludes that Plaintiff sufficiently alleges a transmission defect that causes "harsh engagement when shifting into Drive" due to a faulty calibration of the PCM and DENIES Defendants' Motion to Dismiss this claim.

**B.    Claims for Breach of Implied Warranty**

Defendants argue that Plaintiff fails to state a claim for breach of the New York Implied Warranty of Merchantability doctrine because: (1) Plaintiff lacks privity, (2) Plaintiff has not alleged that her vehicle is unfit for its ordinary purpose under New York Law, and (3) the dealers performed all necessary repairs and adjustments.  (Dkt. 61-1, at 9-14).  The Court disagrees.

13

United States District Court
Central District of California

1.     <u>Privity</u>

Plaintiff falls under the third-party beneficiary exception to the privity requirement.  "New York's Uniform Commercial Code Section 2–314 creates an implied warranty of merchantability 'in a contract for [the] sale [of goods] if the seller is a merchant with respect to goods of that kind.'"  *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1180 (N.D. Cal. Aug. 29, 2017) (citing to N.Y. U.C.C. § 2–314(1)).  "As in California, unless plaintiff alleges personal injuries, parties need to be in privity for a claim of implied warranty of merchantability to arise."  (*Id.*) (citations omitted).

Nevertheless, Plaintiff "may overcome a lack of privity by alleging that she is an intended third-party beneficiary of the contracts between [Toyota] and its dealers."  (*Id.*).  "Under New York law, a party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'"  (*Id.*) (citations omitted).

Here, Plaintiff claims that Toyota has contracts with its dealerships that were designed for and intended to benefit the ultimate customers only.  (*See* Dkt. 59, ¶ 35) ("Plaintiff and Class members are intended third-party beneficiaries of contracts between Toyota and its dealerships; specifically, they are the intended beneficiaries of Toyota's implied warranties. The dealerships are Defendant's agents for sales and repairs. The dealers were not intended to be the ultimate consumers of the RX 350 Vehicles, and the

14

warranty agreements were designed for and intended to benefit the ultimate consumers only."). These allegations, which concern the existence of a contract as well as a sufficiently immediate benefit intended for Plaintiff, are sufficient to establish that Plaintiff is an intended third-party.

Defendants' reliance on *Dixon v. Ford Motor Co.*, is unpersuasive. No. 14-CV-6135 JMA ARL, 2015 WL 6437612, at *6 (E.D.N.Y. Sept. 30, 2015). The Court agrees with the Court in *Johnson* that Plaintiff's allegations are sufficient to state a claim. *See Johnson*, 272 F. Supp. 3d at 1180. Contrary to the holding in *Dixon*, Plaintiff does not have any obligation to cite specific contractual provisions at the pleadings stage, prior to discovery. (*Id.*). Therefore, the Court concludes that Plaintiff is excused from pleading privity under the implied warranty claim.[5]

2.    Unfit for Ordinary Purpose

Plaintiff claims that "the RX Vehicles and their Toyota 8-Speed ECT Transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation. Instead, the RX 350 Vehicles are defective, including the defective design of their Toyota 8- Speed ECT Transmissions." (Dkt. 59, ¶ 89). Although this allegation alone is insufficient to establish that Plaintiff and Class Members' vehicles are unmerchantable,

---

[5] As the Court has found that Plaintiff falls under the third-party beneficiary exception, the Court need not address whether Plaintiff falls under "thing of danger" exception.

15

in light of the totality of the allegations in the TAC, the Court finds that
Plaintiff has sufficiently pled a plausible implied warranty claim.

Under New York law, a breach of implied warranty exists for
merchantable goods where "the seller is a merchant with respect to goods
of that kind," U.C.C. § 2–314(1), the product is not "of fair average quality,"
U.C.C, § 2–314(2), and is not "reasonably fit for its intended purpose."
*Enobakhare v. Carpoint, LLC*, No. 08 CV 4798 ARR, 2011 WL 703920, at *9
(E.D.N.Y. Jan. 10, 2011), report and recommendation adopted, No. 08-CV-
4798 ARR CLP, 2011 WL 704902 (E.D.N.Y. Feb. 16, 2011) (citations
omitted).  "Where the purchased product is an automobile, courts have
determined that a car's ordinary purpose is 'to enable the purchaser to
transport herself upon the streets and highways ... in a reasonably safe
manner.'"  (*Id.*) (citations omitted).

Here, Plaintiff alleges that the Transmission Defect causes "harsh or
delayed shifting and engagement ..."  (Dkt. 59, ¶ 6).  Plaintiff argues that the
faulty transmission affects the vehicles' operability and safety because "…
unpredictable engagement and shifting, jerking, lurching, unintended
acceleration, excessive revving, and lack of power severely affect the
driver's ability to control the car's speed, acceleration, and deceleration, and
can make it difficult to safely operate the vehicle, including safely drive on a
highway, merge into traffic or to turn left across incoming traffic."  (Dkt. 59, ¶
11).

Defendants argue that Plaintiff's vehicle was fit for ordinary use because Plaintiff continued to use her vehicle and Plaintiff could have used her "manual transmission" as an alternative.  Nevertheless, Defendants fail to cite any authority to support these arguments, and the cases Defendants cite are of no avail.  *See Berger v. Mazda Motor of Am., Inc.*, No. 16CV1835MKBCLP, 2019 WL 1428449, at *8 (E.D.N.Y. Mar. 30, 2019) (reasoning that sharp metal pieces underneath the passenger's seat did not affect the drivability of the vehicle); *see Enobakhare*, 2011 WL 703920, at *9; *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 317 (W.D.N.Y. Sep. 10, 2013) (reasoning that brakes that function properly and simply wear out faster than expected are not inherently a "thing of danger" under the exception to the privity rule).

Even though Plaintiff continued to drive her vehicle, she has alleged sufficient facts to state a plausible claim that the vehicles are not fit for the ordinary purpose for which goods are used.  Further, Defendants' arguments regarding the deficiency of specific allegations as they relate to the named Plaintiff is unpersuasive because the TAC—when taken as a whole—adequately alleges that the Plaintiff, and the purported class members' vehicles, are unfit for their ordinary use.

3.   Repairs

Defendants finally argue that Plaintiff's implied warranty claims fail because the dealer applied TSB 3 to Plaintiff's vehicle when she brought her vehicle to the dealer, and although Plaintiff claims that she is still experiencing problems, Plaintiff "never gave the dealer the opportunity to

United States District Court
Central District of California

provide repairs or adjustments to fix those issues."  (Dkt. 61-1, at 14).

Defendants arguments are unpersuasive.

Plaintiff claims that the dealer's repair was ineffective, and that Toyota has no adequate remedy for the defect.  Defendants cite no authority stating that Plaintiff is required to seek further repair attempts when the dealer does not have an adequate remedy.  Indeed, the case Defendants rely on, *Demorato v. Carver Boat Corp.*, held that the replacement remedy was frustrated because the plaintiff refused to permit repairs *after* "[t]he warrantor (Carver) offered additional repairs, including using the same repair method suggested by [Plaintiff's] expert for resolving the vibration problem."  304 F. App'x 100 (3d Cir. 2008).  In fact, the plaintiff's own expert "conceded that repairs, if successful, would resolve all problems …"  (*Id.*).  Accordingly, the court held that the plaintiff could not "cause the repair remedy to fail by refusing to avail themselves of [the defendant's] offer to make additional repairs."  (*Id.*).

Those facts are distinct from the facts present here.  Here, Plaintiff alleges that Defendants have no adequate remedy, and Defendants provide no evidence to the contrary.

The Court thus DENIES Defendants' Motion to Dismiss Plaintiff's Implied Warranty Claim.

18

**C.   Magnuson–Moss Warranty Act Claims**

Plaintiff has agreed to withdraw her Magnum-Moss Warranty Claim in light of recent Ninth Circuit precedent.  (Dkt. 66, at 17 n.6).

The Court therefore dismisses this claim from the TAC.

**D.   Statutory and Fraud Claims**

Defendants posit that Plaintiff's claim for fraudulent omission must be dismissed.  "The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages."  *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 898 (E.D.N.Y. 2018).  Defendants claim that Plaintiff fails to satisfy the first and second prongs—that Toyota had Presale knowledge of the alleged defect, and that Toyota had a duty to disclose the defect even if it did have knowledge.  (Dkt. 61-1, at 15-20).  Defendants also argue that Plaintiff fails to allege the details of the fraudulent omission with particularity.  (Dkt. 61-1, at 20).

1.   <u>Knowledge and Duty to Disclose</u>

Plaintiff argues that Defendants had knowledge of the alleged Transmission Defect at the time she acquired her vehicle for two main reasons: (1) Defendants became aware of the defect based on information gathered from the design process, pre-release testing, aggregate warranty data, driver complaints, and replacement part sales; and (2) Defendants

United States District Court
Central District of California

issued several TSBs discussing transmission problems paralleling Plaintiff's defect allegations here to the TSB's and Customer Support Program.

Plaintiff's conclusory allegations of pre-purchase knowledge based on "pre-sale design and testing" are insufficient.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (holding that "[t]he allegation that HP, as the manufacturer, had 'access to the aggregate information and data regarding the risk of overheating' is speculative and does not suggest how any tests or information could have alerted HP to the defect"); *Tietsworth v. Sears, Roebuck & Co.*, No. 09—cv-00288—JF, 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009) (finding conclusory the allegation that defendants were in a "'superior position to know the truth about the [product]'").

In *Wilson*, the plaintiffs alleged that the defendant had pre-sale knowledge of a design defect because the company had "'access to the aggregate information and data regarding the risk of overheating' and there had been another lawsuit involving the same defect on a different model of laptop computers."  *Wilson*, 668 F.3d at 1146. The court deemed this allegation "speculative" because it did not "suggest how any tests or information could have alerted [defendant] to the defect." (*Id.* at 1147).  The plaintiffs had "also submitted several customer complaints to support their allegation that [defendant] had knowledge of the defect," (*Id.* at 1146), but the complaints were undated or were made after the plaintiff's purchase of the allegedly defective product.  (*Id.* at 1148). The Ninth Circuit held these

20

allegations were insufficient to plausibly support the inference that

defendant knew about a design defect at the time of the sale.  (*Id.* at 1145).

Here, like the plaintiffs in *Wilson*, Plaintiff alleges that "Toyota knew

about the 8-Speed Transmission Defect through sources not available to

consumers, including pre-release testing data, early consumer complaints to

Toyota and its dealers, testing conducted in response to those complaints,

high failure rates and replacement part sales data, and other aggregate data

from Toyota dealers about the problem."  (Dkt. 59, ¶ 48).   Plaintiff does not

submit any specific consumer complaints and does not provide any

substantive details regarding what pre-production testing, design failure

mode analyses, or warranty repair information was purportedly relayed to

Defendants through these sources.  Without the necessary factual support,

Plaintiff's allegations are merely speculative.  Indeed, without alleging any

dates or other relevant facts regarding the supposed consumer complaints

lodged with Defendants and their authorized dealers, Plaintiff cannot show

Defendants had pre-sale knowledge of an alleged transmission defect.

*See, e.g., Wilson*, 668 F.3d at 1147.

On the other hand, the Court finds Plaintiff's well-pled allegations of

pre-purchase knowledge based on technical service bulletins concerning

transmission issues are sufficient.  Plaintiff argues that Defendants had

knowledge of the transmission defect due to technical service bulletins that

Defendants issued before the time of Plaintiff's purchase addressing hard to

shift problems in different Toyota vehicles with 8-speed direct shift automatic

transmission systems.  As discussed above, TSB 2 relating to 2019 Lexus

RX 350's, states that "[s]ome 2019 model year RX350 vehicles may exhibit … harsh engagement when shifting into Drive," and recommends reprogramming "the ECM (PCM)" to prevent the condition.  (Dkt. 59-2). Plaintiff indicates that this suggests Defendants knew that the Lexus RX 350's vehicles were inherently defective.

At this pleading stage, Plaintiff has included sufficient allegations to support a plausible inference that Defendants were aware of the transmission defect with respect to their 2019 Lexus RX 350 vehicles prior to Plaintiff's purchase.  Moreover, Defendants have not identified any basis for the Court to believe that Plaintiff could have been aware of the severity of the defect before purchasing the vehicles, so Plaintiff's allegations support a plausible inference that the details about the cause, scope, and possibility of repair of the transmission defect were within Defendants' exclusive knowledge.  As the Court has found that Defendants had exclusive knowledge over this information, the Court also finds that Defendants had a duty to disclose this information.

2.     Particularity

Plaintiff's allegations are sufficiently particular.  Defendants claim that Plaintiff fails to state what Toyota should have disclosed.  (Dkt. 67, at 12). The Court disagrees.  Plaintiff has alleged that Defendants failed to disclose that the RX350's vehicle's transmissions were defective, and that this information should have been disclosed in Defendants' Moroney stickers and vehicle brochures viewed by Plaintiff.  These allegations explain the content of the omission and pinpoint the place where Plaintiff would have

United States District Court
Central District of California

looked for and found the omitted information had it been provided by Defendants.  Plaintiff has therefore satisfied Rule 9(b)'s heightened pleading standard for her fraud by omission claims.

## IV.    CONCLUSION

The Court therefore DENIES Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Dated:    10/14/20

Virginia A. Phillips
United States District Judge