GREENSTONE LAW APC
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
Email: mgreenstone@greenstonelaw.com

*Attorneys for Plaintiff*

CHRISTOPHER CHORBA (SBN 216692)
ALEXANDER N. HARRIS (SBN 278482)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: cchorba@gibsondunn.com
Email: aharris@gibsondunn.com

*Attorneys for Defendants*

[Additional counsel listed on signature page.]

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ROSALIE QUINONES, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR NORTH AMERICA, INC., and TOYOTA MOTOR CORPORATION,<br><br>Defendants. | Case No. 5:19-cv-01611-VAP-ADS<br><br>**JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(F)**<br><br>Hon. Virginia A. Phillips<br><br>Date:    February 8, 2021<br>Time:    1:30 PM<br>Place:   First Street Court House<br>         Courtroom 8A<br>         350 W. 1st Street<br>         Los Angeles, CA 90012 |

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 26-1, and this Court's Order Setting Scheduling Conference (ECF 71), Plaintiff Rosalie Quinones ("Plaintiff") and Defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor North America, Inc., and Toyota Motor Corporation (collectively "Defendants"), after meeting and conferring on the issues outlined below, respectfully submit this Joint Case Management Statement and Rule 26(f) Report.

## I.   JURISDICTION AND SERVICE

The parties agree that this Court has subject matter jurisdiction over these matters pursuant to U.S.C. §§ 1331 and 1332(d).  In exchange for additional time to respond to discovery, Defendant Toyota Motor Corporation, a Japanese corporation, agreed to a waiver of service.  All other parties have been served, and there are no issues regarding personal jurisdiction or venue.  Defendants contend that Plaintiff lacks Article III standing because she has suffered no injury in fact, and Defendants reserve the right to file a future motion for lack of subject matter jurisdiction under Rules 12 and/or 56 of the Federal Rules of Civil Procedure.  Plaintiffs contend any such motion would lack merit.

## II.   FACTS

### A.   Plaintiff's Statement

Plaintiff Rosalie Quinones ("Plaintiff") brings this action for herself and on behalf of a Class of all persons in the United States ("Class Members") who purchased or leased any 2016 to present Lexus RX 350 ("the RX 350 Vehicles."). Defendants manufactured, marketed, distributed, and sold the RX 350 Vehicles without disclosing that the RX 350 Vehicles' transmissions were defective.

The RX 350 Vehicles are equipped with the Toyota 8-Speed ECT Transmission. Plaintiff is informed and believes, and based thereon alleges, that the RX 350 Vehicles' Toyota 8-Speed ECT Transmission is defective in its design and/or manufacture in that, among other problems, it causes harsh or delayed shifting and engagement, delayed acceleration, hesitation, jerking, unintended acceleration, lurching, excessive

revving before upshifting (also known as excessively high RPM shift points), and lack of power when needed (such as from a stop) (the "8-Speed Transmission Defect"). Toyota suggests that the 8-Speed Transmission Defect is based on scattershot symptoms conjured up by Plaintiff, but Toyota has repeatedly acknowledged the issues of which Plaintiff complains in service bulletins issued to its dealers discussing hesitation, harsh engagement, surging, bucking and the like.  Indeed, at the same time that Toyota has opposed this lawsuit and publicly denied the existence of the Defect, it has quietly opened an investigation into a "vehicle surge/hesitation" condition in numerous other vehicles equipped with the same or substantially similar transmission. *See* Toyota Tech Tip 0615-20 (August 7, 2020).

The 8-Speed Transmission Defect is material because it poses a serious safety concern. As attested by Class Members in complaints to the National Highway Traffic Safety Administration ("NHTSA"), and other online forums, delayed acceleration, unpredictable engagement, and shifting, jerking, lurching, unintended acceleration, excessive revving, and lack of power severely affect the driver's ability to control the car's speed, acceleration, and deceleration, and can make it difficult to safely operate the vehicle, including safely driving on a highway, merge into traffic or to turn left across incoming traffic. Toyota had superior and exclusive knowledge of the 8-Speed Transmission Defect and knew or should have known that the Defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the RX 350 Vehicles. Plaintiff brings claims for Breach of Implied Warranty under the Magnuson-Moss Warranty Act and under New York law, for Violation of New York General Business Law §§ 349, 350, *et seq*., and for Fraudulent Omission.

### B.   Defendants' Statement

Toyota commercialized the world's first 8-speed automatic transmission in the 2007 model year Lexus LS 460.  Toyota introduced an 8-speed automatic transmission to the Lexus RX350 (at issue in *Morales/Quinones*) beginning with model year 2016. Toyota introduced an 8-speed automatic transmission to the Toyota Camry (at issue in

*Loo*) beginning with model year 2018. The development of 8-speed automatic transmissions is a remarkable achievement for the auto industry, allowing the production of vehicles that combine excellent fuel efficiency with cutting-edge performance. This transmission provides a number of ground-breaking benefits. Its design is compact and lightweight, with a low center of gravity allowing improved stability. The 8-speed automatic transmission permits a quieter driving experience as it enables vehicles to reach higher speeds with relatively low engine revving (or revolutions per minute (RPM)). The lower RPMs also allow fuel efficiency levels previously unheard of for non-hybrid vehicles of a similar size. Especially for drivers in mid-speed city traffic, the 8-speed automatic transmission maximizes fuel efficiency by allowing many different gear steps with small intervals. In sum, additional gears offer more opportunities for the car to operate in its "sweet spot." The higher number of gears also enhances the driving experience, making transmissions with 8 (or more) speeds a very desirable feature.

Plaintiffs' counsel attempt to portray this technological achievement as an industry-wide "defect," bringing a total of four putative class action lawsuits against Defendants.[1] Across these cases, the plaintiffs allege scattershot "symptoms" of the 8-speed automatic transmissions that they attempt to transmogrify into a sweeping "defect" across almost the entire Toyota and Lexus product line. These symptoms include "hesitation," "delayed acceleration," and "jumping into gear" that (plaintiffs allege) arise from issues with the 8-speed automatic transmissions in their Toyota Camry and Lexus RX350 vehicles.

---

[1] The *Morales/Quinones* complaint asserts claims regarding the 2016–2019 MY Lexus RX350, and *Loo* alleges "defects" in the 2018–2019 MY Toyota Camry. The other two cases involve 2017 to present Toyota Highlander, 2017 to present Toyota Sienna, and 2019–2020 Toyota RAV4 vehicles. *See Murphy v. Toyota Motor Sales, U.S.A.*, No. 2:20-cv-05892-VAP-ADS, and *Peguero v. Toyota Motor Sales, U.S.A.*, No. 2:20-05889-VAP-ADS. Plaintiffs also previously asserted claims involving the 2018 to present Toyota Avalon, 2018 to present Lexus ES 350, 2018 to present Lexus GS 350, and 2018 Toyota RAV4, but later abandoned those claims. *See Morales/Quinones* Dkt. 52 (dropping claims against six of the seven vehicle models at issue in the First Amended Complaint); *Peguero* Dkt. 47 (stating the inclusion of 2018 RAV4 vehicles was an "oversight.").

Toyota vigorously disputes the existence of any "defect" in its 8-speed automatic transmissions across the diverse models challenged by Plaintiffs' counsel. They have not and will not be able to link the "drivability" issues they allege with any deficiency in the vehicles' transmissions. Despite enlisting 17 plaintiffs (13 current plaintiffs and 4 who subsequently dropped out) across four cases involving five different Toyota and Lexus vehicle models, Plaintiffs have not been able to present a singular example of any Toyota dealer or automobile mechanic diagnosing a single transmission defect caused by "miscalibration." Instead, they attempt to cobble together a set of Technical Service Bulletins addressing a variety of engine and transmission-related occurrences, many of which have nothing to do with Plaintiffs' vehicles or alleged symptoms, and none of which suggests that any vehicle owned by any Plaintiff is or was "defective." At most, the complaints allege that Plaintiffs expected a different "feel" and "drivability" experience. For all their speculation about how the myriad symptoms they describe *could* pose a safety problem, none of the named Plaintiffs alleges any actual injury or even threatened safety risk. In fact, despite claims that the transmission symptoms create an "unreasonably dangerous" safety hazard (*see Loo* Dkt. 38 ¶ 27), Plaintiffs have continued to use their vehicles for daily use and longer road trips. Already, Defendants conducted an initial assessment of plaintiff Rosalie Quinones' Lexus RX 350 vehicle late last year, after Plaintiffs informed Defendants that Ms. Quinones intended to sell her vehicle in the near future. There were no "defects" in her vehicle or even any "drivability" issues. And the New Vehicle Limited Warranty applicable to Ms. Quinones' vehicle limits her relief to repairs for "manufacturing defects," none of which is alleged. (*See Morales/Quinones* Dkt. 62; Dkt. 69 at 5 n.2 (granting Request for Judicial Notice).) Toyota respectfully submits that Plaintiffs' claims are without merit and that Plaintiffs will not be able to certify a class or present a basis for relief.[2]

---

[2] The Tech Tip Questionnaire that Plaintiffs characterize as a "quietly opened [] investigation" (*see supra* p. 2), is actually a publicly-available questionnaire designed to "better understand our customers expectation regarding drivability." (*See* Tech Tip T-TT-0615-20, *available at* https://static.nhtsa.gov/odi/tsbs/2020/MC-

*(Cont'd on next page)*

III.   **LEGAL ISSUES**

   A.   **Plaintiff's Statement**

   Plaintiff contends that the key legal issues in this litigation are, among others:

   1.   Whether the 8-Speed Transmission Defect present in the RX 350 Vehicles is a material fact to the reasonable consumer;

   2.   Whether Defendants had a duty to disclose the 8-Speed Transmission Defect to Plaintiff and other Class Members;

   3.   Whether Defendants failed to disclose or actively concealed the 8-Speed Transmission Defect from Class Members;

   4.   Whether Defendants violated New York's General Business Law, §§ 349, 350, as alleged in the complaint;

   5.   Whether Defendants breached implied warranties under the Magnuson-Moss Warranty Act and under New York Law;

   6.   Whether Defendants committed Fraudulent Omission, as alleged in the complaint; and

   7.   Whether Plaintiff and the Class Members are entitled to damages on a class-wide basis as a result of Toyota's violations, as listed above.

   B.   **Defendants' Statement**

   Defendants deny that they have violated any laws, that Plaintiff has stated a claim under any theory, or that Plaintiff is entitled to any relief.  The conclusory "issues" identified above are simply restatements of the causes of action, and there are no "common" questions apt to drive the resolution of this litigation under Rule 23 of the Federal Rules of Civil Procedure.  Defendants dispute that Plaintiff may obtain class certification pursuant to Rule 23, or that Plaintiff may establish a class-wide basis for awarding monetary relief or equitable restitution.

---

10177575-9999.pdf.)  This questionnaire is applicable to several different Toyota models, but *not* the Lexus RX350 at issue in *Morales/Quinones*.  (*Id.*)

## IV.   SCHEDULE FOR DISPOSITIVE OR PARTIALLY DISPOSITIVE MOTIONS (L.R. 26-1(B))

### A.   Plaintiff's Statement

Plaintiff intends to file a Motion for Class Certification as well as a Motion for Summary Judgment or Summary Adjudication. Plaintiff understands Defendants intend to file a Motion for Summary Judgment at the completion of discovery which Plaintiff intends to oppose. Plaintiff's proposed class certification filing deadline is set forth in the Schedule of Pretrial and Trial Dates attached as Exhibit A.  Plaintiff respectfully submits that other case deadlines, including the deadline for hearing summary judgment motions, should be set after a ruling on class certification.   Plaintiff objects to Defendants' statement below as unduly argumentative and not in keeping with the Local Rules' simple directive to outline anticipated dispositive motions.  *See* L.R. 26-1. Moreover, Defendants' anticipated Motion for Appointment of Lead Counsel is improper and unnecessary.  The present matter was originally filed by Capstone Law APC ("Capstone") and Berger Montague ("Berger") on August 22, 2019.   Shortly before on April 4, 2019, *Loo v. Toyota Motor Sales, U.S.A.*, No. 8:19-cv-00750 was filed by Greenstone Law APC ("Greenstone") and Glancy Prongay & Murray LLP ("Glancy").   The four firms subsequently came together to litigate the matters in coordination *without* the need for any court intervention.  The four firms were also class counsel in a similar litigation regarding allegedly defective transmissions in various Nissan vehicles that resulted in one of the largest and most successful automobile class action settlements in recent years, with classes comprised of over six million members and relief collectively valued at approximately one billion dollars. *See Gann, et al. v. Nissan North America*, No. 3:18-cv-00966 (M.D. Tenn.) (Greenstone and Glancy serving as class counsel along with multiple other firms, final approval granted March 10, 2020) and *Weckwerth, et al. v. Nissan North America*, No. 3:18-cv-00588 (M.D. Tenn.) (Capstone and Berger serving as class counsel with multiple other firms, final approval granted March 10, 2020).

Plaintiff's counsel have worked effectively, cooperatively, and efficiently in these and other automobile defect class actions, and Defendants have no standing to challenge Plaintiff's choice of counsel in this action.  Below Defendants inaccurately state that "[a]lready, scheduling conferences of counsel and turning drafts of this Joint Report and stipulations of counsel have been needlessly delayed by the sheer number of attorneys on the Plaintiffs' side."  This is untrue—Defendants cannot point to a single event that has been delayed due to the number of Plaintiff's counsel, or a disagreement or conflict among them, because there has been none.  Defendants' entire argument rests upon speculation about what *might* happen in the future and is motivated not by a genuine desire to streamline litigation but rather to control Plaintiff's use of resources and Defendants' fee exposure.  The reality is that lead counsel briefings are generally the product of the *inability* of Plaintiff's counsel to work together.  The type of cooperation demonstrated by Plaintiff's counsel here promotes efficiency and should be encouraged.

This is a significant litigation involving some of the most popular vehicles in the world.  Plaintiffs estimate the number of Class Vehicles nationwide across all four related cases to exceed two million.  Defendants have retained one of the largest law firms in the world with over 1,400 attorneys and will surely leverage these substantial resources.  Plaintiff should be able to respond in kind unfettered by needless limitations on representation.  The seriousness of the alleged Defect and the number of Class Vehicles more than justifies the resources the Plaintiffs have dedicated.

Indeed, courts have long looked with skepticism at class action Defendants seeking to control which firms may be appointed class counsel. One court derided such obviously self-interested attacks as being like "permitting a fox…to take charge of the chicken house."  *Eggleston v. Chicago Journeymen Plumbers' Local Union,* 657 F.2d 890, 895 (7th Cir. 1981).  California courts hold the same, disregarding defendants' attacks as they "can be used to harass opposing counsel, to delay the litigation, to intimidate an adversary into accepting settlement on otherwise unacceptable terms, or

for other strategic purposes." *Sharp v. Next Entertainment*, 163 Cal. App. 4th 410, 434 (2008). In *Sharp*, the court rejected a defendant's attempt to disqualify class counsel based on a purported conflict, explaining that courts must be "skeptical of the impetus and purpose" of such motions. *Id.* To knock out effective class counsel, the *Sharp* court concluded, "would provide a tactical edge to the employer at the expense of the putative class." *Id.*

Finally, Defendant paints a misleading picture of the status of the present and related actions.  In all four cases this Court has held that Plaintiffs adequately alleged a defect.  In the present case this Court denied Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint in its *entirety*.  (ECF 69)  A small number of Plaintiffs have chosen to dismiss their claims.  For example, Raul Morales, a former Plaintiff in this action, had his vehicle repossessed.  Sharon and Brett Page, former Plaintiffs in the *Murphy* action, experienced so many problems due to the Transmission Defect that they sold their vehicle.  The decision of these Plaintiffs to dismiss their claims was a result of unforeseen circumstances and had nothing to do with the merit of their claims.

**B.    Defendants' Statement**

**1.    *Previous Motions*.**

This action began with three plaintiffs purporting to bring claims on behalf of all persons in California, Georgia, or New York who purchased or leased seven different types of Toyota and Lexus vehicles from model years 2018 to present. (*Morales/Quinones* Dkt. 39.)  The only plaintiff who arguably had standing to bring Georgia claims (Robinson Bertrand) dropped out early, and Defendants moved to dismiss the remaining claims on the grounds that Plaintiffs failed to allege a plausible "defect" theory and therefore could not state claims for breach of express or implied warranty or common law fraud. (*Morales/Quinones* Dkt. 42.)  As soon as the parties finished briefing the motion to dismiss, a second plaintiff (Raul Morales) bowed out of the case, leaving no plaintiff with standing to bring a California claim.   (*See Morales/Quinones* Dkt. 46.)

After losing two of their three plaintiffs, Plaintiffs' counsel expressed their intent to recruit a substitute California resident plaintiff to carry on Mr. Morales' claims. (*See Morales/Quinones* Dkt. 44 at 2.)  The Court granted Defendants' motion to dismiss in its entirety, but gave Plaintiffs' counsel an opportunity to find a new plaintiff and re-plead the case.  (*See Morales/Quinones* Dkt. 49.)  Presumably unable to do so,  counsel filed a Third Amended Complaint on July 10, 2020, with one named plaintiff, one vehicle at issue (the 2016–2019 Lexus RX350), and under the laws of only one state (New York).[3]  (*Morales/Quinones* Dkt. 59.)  After a second round of motion to dismiss briefing, Defendants answered the Third Amended Complaint on November 30, 2020. (*Morales/Quinones* Dkts. 73–75.)

In the related *Loo* case, Defendants moved to dismiss the initial complaint in July 2019.  (*Loo* Dkt. 11.)  The motion was mooted when Plaintiffs amended the complaint to add two new plaintiffs and three new claims.  (*See Loo* Dkts. 16–17.)  Defendants filed a new motion to dismiss in September 2019.  (*Loo* Dkt. 29.)  The Court granted the motion in part, agreeing with Defendants that the California Unfair Competition Law claim should be dismissed with prejudice because Plaintiffs could not state a claim for equitable relief as they were unable to show that legal remedies would be inadequate. (*Loo* Dkt. 37 at 31.)  The Court also dismissed Plaintiffs' claims for breach of express warranty and implied warranty claims under California, Virginia, and Federal law with leave to amend.  (*Id.* at 32.)

After another round of motion to dismiss briefing, the Court concluded that Plaintiffs' Second Amended Complaint contained "conclusory allegations insufficient to salvage Plaintiffs' express warranty claims from dismissal." (*Loo* Dkt. 49 at 8.)  This time, the Court dismissed all state and federal express warranty claims with prejudice, and also eliminated Plaintiffs' claims for equitable relief under the California Consumers Legal Remedies Act, and for economic damages under Virginia's implied warranty law.

---

[3] Plaintiffs also brought a federal Magnuson-Moss Warranty Act claim but agreed to withdraw it in light of recent Ninth Circuit precedent in *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027 (9th Cir. 2020).  (*See Morales/Quinones* Dkts. 66, at 17, n.6; 69 at 19.)

1   (*Loo* Dkt. 49 at 16.)  This narrowed the case down to only implied warranty claims under

2   California and Virginia law and the Magnuson-Moss Warranty Act and state statutory

3   consumer protection and common law fraudulent omission claims.  (*Id.*)  Plaintiffs

4   amended their complaint a third time on April 17, 2020, and they filed a Fourth Amended

5   Complaint on July 24, 2020, to add an additional plaintiff from California.  (*Loo* Dkts.

6   50, 75.)  Defendants answered the Fourth Amended Complaint on August 31, 2020.

7   (*Loo* Dkts. 77–79.)

8        In April 2020, Plaintiffs moved to consolidate the *Loo* and *Morales/Quinones*

9   actions and appoint interim lead counsel.  (*See Loo* Dkt. 48.)  Although Defendants

10  agreed that coordinating the actions and appointing lead counsel would allow the cases

11  to proceed more efficiently (*see Loo* Dkt. 54), Plaintiffs withdrew their motion to

12  consolidate without explanation (*see Loo* Dkt. 53).  As explained below, the Court

13  should take up the request to appoint interim lead counsel to streamline the prosecution

14  of these actions.

15        **2.    *Interim Class Counsel.***

16        Defendants request that the Court appoint interim class counsel pursuant to

17  Rule 23(g).  For the reasons stated in Defendants' response to Plaintiffs' withdrawal of

18  the prior motion to consolidate these actions (*see Loo* Dkt. 54 at 1), appointment of

19  interim class counsel is appropriate to streamline this case.  And the conduct of the action

20  since that time only reinforces the need for a streamlined set of attorneys on the

21  plaintiffs' side in all four related actions.

22        It should be apparent that this case does not warrant four firms and more than a

23  dozen lawyers.  Saying this is a "significant litigation" does not make it so.  Both actions

24  (as well as the related *Murphy* and *Peguero* actions) involve the same Defendants (who

25  are represented by one law firm and three attorneys), and an attempted coordinated

26  attack on Toyota's 8-speed automatic transmissions (although involving different

27

28

vehicles).[4]   Allowing an ungainly structure of four law firms to continue past the pleadings stage would inhibit the efficient progress of the litigation, as work would undoubtedly be duplicated and every conference of counsel, motion, stipulation, discovery request, deposition, hearing, conference, settlement discussion, or any other pretrial activity would require the input of, or at least coordination with at least a dozen different attorneys.  This is a recipe for gridlock that would threaten future settlement discussions, when Plaintiffs realize the case does not have the value they assume right now but their bloated lodestar becomes an impediment to resolving the case on proportionate terms.  As the Court is well aware, a primary purpose of appointing interim class counsel is to maximize efficiencies and to eliminate duplication of efforts and "unproductive posturing" by the various plaintiffs' lawyers and firms.  *See* 5 James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 23.121 (3d ed. 2010).  Contrary to Plaintiffs' counsel's argument, it is customary to have such appointments in coordinated actions involving multiple law firms.

Defendants express no view as to which particular lawyer and/or firm should serve as interim lead counsel, as this is a matter for the Court and the individual clients to decide.  But the complex and unwieldy apparatus currently in place (in which *four firms* are currently representing Plaintiffs, with each acting as "lead" counsel) is inefficient.  Already, scheduling conferences of counsel and turning drafts of this Joint Report and stipulations of counsel have been needlessly delayed by the sheer number of attorneys on the Plaintiffs' side.[5]  As other courts in this Circuit have cautioned, "shared leadership structures complicate, muddle, and otherwise bloat litigation," *Nicolow v.*

---

[4] The referenced Nissan litigation involved a completely different transmission, vehicle manufacturer, vehicle model, and alleged symptoms—including alleged failures and malfunctions of the transmission that are not present here.  To the extent Plaintiffs' counsel want to tout their experience in that action, they may do so in their lead counsel application.  But their purported experience in automatic transmission cases—to the extent relevant at all—should support a more streamlined structure.

[5] Plaintiffs' counsel dispute this assertion, but attempting to schedule calls and prepare joint reports have led to delays that would not exist if there were a smaller group empowered to act on behalf of Plaintiffs.  These problems will only become worse when it comes to negotiating discovery, scheduling depositions (if necessary), working out stipulations, and other important procedural steps.

*Hewlett Packard Co.*, No. 12-05980, 2013 WL 792642, at *9 (N.D. Cal. Mar. 4, 2013), and "increase the risk that items may fall through the cracks," *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2008 WL 2024957, at *1 (N.D. Cal. May 9, 2008). For these reasons, plaintiffs should generally avoid these structures absent unique circumstances that are not present here.

Defendants respectfully submit that the Court should require applications to appoint *one* firm as interim lead counsel to prosecute these cases. As other courts have recognized, "a single firm will usually provide more effective and efficient representation than a group of two or more firms" because it is "already organized with internal levels of communication and management structure." *CRT Antitrust Litig.*, 2008 WL 2024957, at *1.

To the extent the Plaintiffs continue to object to streamlining their structure, they are on notice that Toyota will vigorously oppose any fee application revealing inefficiencies. *See*, *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 16-2617, 2018 WL 11195115, at *3 (N.D. Cal. Feb. 2, 2018) (expressing "concerns that billing items may be duplicative or ineffective," given the high number of firms and timekeepers involved); *Adderley v. NFLPA*, No. 07-943-WHA, 2009 WL 4250792, at *2–3 (N.D. Cal. Nov. 23, 2009) (reducing lodestar that was "bloated by the presence of too many lawyers" and finding "excessive fees incurred by the presence of more than two attorneys at depositions and hearings").

### 3.   *Other Anticipated Motions.*

Defendants understand that Plaintiffs across the four related cases anticipate moving for class certification, and they have indicated an intent to file four separate motions. None of these matters are suited for class treatment and Defendants will oppose all of these motions. Defendants also anticipate moving for summary judgment against the named plaintiffs, and they have included a proposed schedule for these motions in the chart below. (*Infra* pp. 23–25.) Those motions should not await a decision on class certification, to the extent there are grounds for judgment against one

1   or more of the named plaintiffs in this action.  Defendants are mindful of this Court's

2   limitations on multiple summary judgment motions, and will attempt to file a

3   consolidated motion across all four cases to reduce the burden on the Court.

4        If this case proceeds beyond class certification and reaches trial, Defendants

5   anticipate filing motions *in limine* at the appropriate stage.

## V.   AMENDMENT OF PLEADINGS AND ADDITIONAL PARTIES (L. R. 26-1(E)).

### 1.   Plaintiff's Position

9        Plaintiff does not currently have amendments to make to Plaintiff's Third

10  Amended Complaint, which Defendants answered on November 30, 2020.  Plaintiff

11  may seek to amend in the future to add new parties and/or modify Plaintiff's allegations

12  based on new information learned through the discovery process, and reserves the right

13  to do so.  Plaintiff believes that in keeping with the Court's Schedule of Pretrial and

14  Trial Dates attached as Exhibit A, the deadline to amend should be concurrent with or

15  follow class certification.

16       With regard to Defendants' argument below concerning the length of time this

17  matter has been pending, Plaintiff has litigated this matter diligently and expediently

18  since filing the case on August 22, 2019.  Plaintiff has opposed two motions to dismiss

19  (ECF 42 and 61) and has filed three complaints.  It is not unusual in complex

20  automotive defect cases such as this one for multiple complaints to be filed, and for

21  the briefing at the pleadings stage to take a year or more to be resolved.  Plaintiff also

22  notes that over the summer of 2020 when motion to dismiss schedules were being

23  coordinated in this matter and the other matters listed in Section VI below, Defendants

24  specifically requested Plaintiff's agreement that the parties work together so that

25  discovery would commence at the same time, to which Plaintiff agreed subject to the

26  Court's approval.  Defendants' suggestion below that Plaintiff has not moved

27  expeditiously and, therefore, that an early deadline for amendment should be adopted,

28  is inconsistent with this spirit of cooperation.

## 2.   Defendants' Position

Defendants do not anticipate the need to add any additional parties to this case, but given the passage of time and the extensive amendments to date, the Court should set a firm and very early deadline pursuant to Rule 16(b) for the addition of any additional parties and/or further amendments to the complaints.  *See* Fed. R. Civ. P. 16(b)(3)(A).  *See infra* p. 23.  Plaintiff may "seek to amend in the future to add new parties and/or modify Plaintiff's allegations based on new information learned through the discovery process," as indicated above (*supra* p. 13) may be consistent with Rule 15, and that deadline can be set at a later time.  But to the extent there is any intent to amend *at this time*, they should do so soon.  Plaintiffs include only a vague statement that they "reserve[] the right" to amend, but the time for endless amendments of the pleadings has long since passed.

It is approaching two years since Plaintiffs initiated this litigation.   In total, Plaintiffs have filed 13 initial and amended complaints in four cases.  Defendants have now answered the operative complaints in the first two.  (*See Loo* Dkts. 77–79; *Morales/Quinones* Dkts. 73–75.)  However, despite Defendants' desire to expediently move forward past the pleadings stage and toward resolution, Plaintiffs continue to use amendments to pleadings as a way to introduce new claims and new plaintiffs.  The week before Christmas, Plaintiffs filed amendments to the *Murphy* and *Peguero* complaints, adding a total of seven new plaintiffs in four new states and introducing 12 new claims.  (*See Murphy* Dkt. 46; *Peguero* Dkt. 51.) Continuing to amend complaints with new plaintiffs and new claims under new state laws has resulted in an endless cycle of Rule 12 briefing that will only delay resolution of the remaining claims.  Defendants respectfully request that the Court set an early deadline for any further amended pleadings in these actions. Fed. R. Civ. P. 16(b)(3)(A).  In particular, Defendants oppose Plaintiffs' counsel's proposal that they be allowed to recruit replacement plaintiffs and add new claims until **February 25, 2022** (*see* Exhibit A).   That approach would effectively re-set discovery in another year and waste additional time.

## VI. RELATED CASES

This action is one of four cases pending before this Court alleging defects in Toyota vehicles equipped with 8-speed automatic transmissions.[6] For the court's reference, the status of each case is listed below:

| Case | Class Vehicles | Status |
|---|---|---|
| *Loo v. Toyota Motor Sales, U.S.A.*, No. 8:19-cv-00750-VAP-ADS | 2018–2019 Toyota Camry | Defendants filed answers to the Fourth Amended Complaint on August 31, 2020.  (*Loo* Dkts. 77–79.) |
| *Morales v. Toyota Motor Sales, U.S.A.*, No. 5:19-cv-01611 | 2016–present Lexus RX350 | Defendants filed answers to the Third Amended Complaint on November 30, 2020.  (*Morales/Quinones* Dkts. 73–75.) |
| *Murphy v. Toyota Motor Sales, U.S.A.*, No. 2:20-cv-05892-VAP-ADS | 2017–present Toyota Highlander; 2017–present Toyota Sienna | Defendants will move to dismiss the First Amended Complaint on February 5, 2021.  (*Murphy* Dkt. 49.) |
| *Peguero v. Toyota Motor Sales, U.S.A.*, No. 2:20-05889-VAP-ADS | 2019–2020 Toyota RAV4 | Defendants will move to dismiss the First Amended Complaint on February 12, 2021.  (*Peguero* Dkt. 54.) |

### A. Plaintiff's Statement

Plaintiff agrees that discovery should be coordinated in the four 8-Speed Transmission Cases listed above and that it should start now.  Plaintiff disagrees with Defendants' statements regarding the need for appointment of lead counsel for the

---

[6] The docket for this matter currently only reflects the *Loo* case as related.  Counsel agree that all four cases are properly related, and a Notice of Related cases was filed in each case.

reasons stated in Section IV above.

**B.     Defendants' Statement**

As discussed above, Defendants contend that after the pleadings stage, (1) the schedule for *Murphy* and *Peguero* should be aligned with the schedule in *Loo* and *Morales/Quinones*, (2) discovery in all four cases should be coordinated, and (3) a single law firm should be appointed as lead counsel in all four cases.  Given the use of prior amendments to expand the number of plaintiffs, vehicles, state laws, and claims at issue in these cases, coordination will help streamline the issues and promote efficiency.  If discovery is not coordinated, the parties will undoubtedly spend time duplicating responses to identical or substantially similar discovery requests.

**VII.   INITIAL DISCLOSURES (RULE 26(F)(2) & (F)(3)(A))**

The parties agree to exchange initial disclosures by March 1, 2021.

**VIII.  DISCOVERY**

**A.     The Anticipated Scope of Discovery**

**1.     Plaintiff's Position**

Plaintiff anticipates the need for written and oral discovery from both Defendants and believes that the bifurcation of merits and class discovery is not practicable in a case of this nature.  Plaintiff also takes exception to the suggestion below that Plaintiff must make a showing of need to depose Toyota Motor Corporation ("TMC"), which is a party to this action and likely to possess key information concerning the testing and development of the Class Vehicles.  Plaintiff has a right to depose TMC.  As discussed in the Section XI below, the current unavailability of TMC for deposition due to the COVID-19 pandemic is a very significant schedule consideration.

Plaintiff anticipates propounding discovery related to several key areas of investigation, including but not limited to, the RX 350 Vehicles, their Engine Control Module ("ECU") / Powertrain Control Module ("PCM"), the way in which miscalibration in the ECU/PCM prevents the 8-Speed ECT Transmission and the

engine from modulating smooth shifts, acceleration, declaration, and the like, the design, implementation, warranty terms, complaints, service bulletins, sales data concerning the RX 350 vehicles, alternative designs, failures, service or technical bulletins, analysis of associated costs, other lawsuits, recall notices, service and repair records, complaints to and/or investigations by NHTSA, policies and procedures, the identity of Class Members, and the like.

In addition to the discovery set forth above, Plaintiff anticipates the need for the following additional discovery:

- Depositions (up to 10) of Defendants' Corporate Representatives regarding consumer complaints, warranty data, goodwill repairs, training, design and internal testing, and other related issues regarding the Class Vehicles, their transmissions and the effect of ECU/PCM calibration on the transmissions' and engines' modulation of and shifts, acceleration, deceleration, and the like;

- Additional interrogatories, as necessary, following receipt of Defendants' Responses to Plaintiff's First Set of Interrogatories;

- Additional document requests, as necessary, following receipt of Defendants' Initial Disclosures and Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents;

- Depositions of Defendants' experts and related document requests; and

- Requests for Admissions and additional interrogatories and document requests.

### 2.    Defendants' Position

At this stage, it is most efficient to focus discovery on the information needed to brief class certification. *See, e.g.*, *Munro v. Univ. of S. Calif.*, No. 16-6191-VAP, 2018 WL 2584611 (C.D. Cal. May 11, 2018) (noting that "class discovery" is "tailored to the elements Plaintiffs must satisfy to certify a class"); *Luna v. Universal City Studios LLC*, No. 12-9286-PSG, 2015 WL 13655668, at *3 (C.D. Cal. Feb. 10, 2015) (explaining that

"the Rules advisory committee recommends that merits discovery in class action lawsuits, . . . be 'controlled' prior to certification to focus on issues relevant to the certification").  To be clear, Defendants are not proposing formal bifurcation, but the parties should concentrate their efforts on what is necessary to move for (and to oppose) class certification.  That would include focused discovery from the named Plaintiffs and Defendants.

Defendants propose that class certification discovery should be completed by September 24, 2021, but recognize that more time may be needed if restrictions due to the COVID-19 pandemic significantly impede necessary class certification discovery. In particular, to the extent Plaintiffs make a showing of a need for a deposition of Toyota Motor Corporation (TMC), a Japanese corporation, at this early stage, there are legal and logistical barriers that will require additional time.  International travel is not currently feasible, and remote depositions are impermissible under the terms of the United States-Japan Consular Convention Protocol Treaty and Japanese law.

Plaintiffs' counsel attempt to portray these limitations as an effort to bar discovery.  That is not the case.  As Defendants have explained, they remain willing to confer with Plaintiffs over these issues to avoid any disputes and to accommodate their discovery needs for class certification.  In particular, during the January 19, 2020 meet and confer teleconference, undersigned counsel reiterated that Defendants will work with Plaintiffs to facilitate depositions to the extent they are proportional to the needs of the case.  At this point, however, Plaintiffs have not identified any need for depositions of TMC for purposes of class certification, nor have they demonstrated any discovery needs that cannot be addressed remotely and domestically.

During class certification discovery, Defendants anticipate deposing all named plaintiffs and serving written discovery requests.

Finally, consistent with the parties' prior agreements (*see Loo* Dkt. 81 ¶ 2), Defendants respectfully submit that discovery across all four actions should be coordinated in the interest of efficiency.  This will allow all parties to avoid the need to

respond separately to identical discovery requests and will pave the most expeditious path forward toward the class certification stage.

### B.      Electronically Stored Information

All parties understand their duty to preserve records, including electronic records, and have taken steps and will continue to preserve all documents potentially relevant to this action in their possession, custody, or control as required by applicable law.

### 1.      Plaintiff's Position

Plaintiff believes that the parties should meet and confer regarding an ESI protocol governing the production of electronic records. Defendants' suggestion that this is premature and unnecessary is inconsistent with the realities of modern-day litigation, particularly in the automotive defect field. It is the experience of Plaintiffs' counsel that the vast majority of responsive documents in Defendants' possession, custody or control will be maintained electronically. A proper ESI protocol will help to ensure fair and efficient document gathering and production. Defendants' resistance to this standard protocol foreshadows the issues Plaintiff will be forced to address once discovery begins and is yet another reason that Defendants' proposed schedule is unrealistic.

### 2.      Defendants' Position

It is both premature and unnecessary to negotiate an ESI protocol. Plaintiffs have not shown why there would be a need for such discovery for class certification, particularly given the simplicity of their alleged "common" issues identified above. In particular, a burdensome discovery process not only prolongs this litigation, it also drives up costs and further drives the parties apart on potential settlement. Discovery in this matter should be proportionate to the needs of the case, and for now that is the information necessary for class certification. Nevertheless, Defendants will discuss an appropriate protocol if it becomes necessary to undertake large scale document collection and production efforts later in this case. But Defendants reject Plaintiffs' counsel's reflexive assertion—without any support whatsoever—that this case

automatically demands burdensome and expensive discovery, just as Defendants reject Plaintiffs' counsel's conclusory assertions that this is a "significant litigation" warranting four law firms and a dozen attorneys to prosecute it.

### C.      Privilege and Confidentiality Issues (Rule 23(f)(3)(D))

The parties anticipate they will agree upon and submit to the Court a proposed stipulated protective order that will apply to highly confidential and confidential information produced in discovery and any claims of privilege.  Each party retains its right to object to requested discovery to the extent material protected by the attorney-client, work-product, or other applicable privilege is requested and agree to provide a privilege log regarding all documents withheld or redacted based on any claim of privilege or work product protection.

### D.      Changes to the Limitations on Discovery Imposed by the Federal Rules (Rule 23(f)(3)(E))

The parties do not currently anticipate that it will be necessary to alter the limitations on discovery imposed under the Federal or Civil Local Rules.

### E.      Opportunities to Reduce Costs and Increase Efficiency and Speed

The parties agree that coordinating discovery between all four related cases identified *supra* is likely to reduce costs and increase efficiency and speed in these matters. The parties will also aim to increase efficiency and speed by exchanging documents, including written discovery, electronically. The parties agree that Federal Rule of Civil Procedure 6(d), which provides a three-day extension following service made by electronic means, still applies to such exchanges.

## IX.   COMPLEX CASE

The parties do not presently anticipate that the Manual for Complex Litigation will be necessary in this action.

## X.   SETTLEMENT AND ADR (LOCAL RULE 26-1 (C))

Pursuant to this Court's Standing Order and L.R. 16-5.4, the parties have selected ADR Procedure No. 3, a private dispute resolution proceeding, as the most appropriate

procedure for this case.  The parties are submitting their ADR Procedure Selection Form concurrently with this joint report.

## XI.    <u>SCHEDULING</u>

Pursuant to this Court's Order Setting Scheduling Conference (*Loo* Dkt. 80, *Morales* Dkt. 71) a proposed master schedule is attached as Exhibit A (Schedule of Pretrial and Trial Dates).

### A.    **Plaintiff's Statement**

Pursuant to the Court's Order Setting Scheduling Conference, Plaintiff's proposed schedule is set forth in Exhibit A.  In light of the potential impact of the COVID-19 pandemic on discovery, including but not limited to the current inability of TMC to sit for depositions, Plaintiff requests a further status conference in or around June 2021 to check status and further consider whether these dates should be adjusted, and to set a class certification briefing schedule.  Plaintiff believes that expert reports in support of, or opposition to, class certification, can be submitted in conjunction with the class certification briefing and do not require separate deadlines.

Plaintiff believes the schedule proposed by Defendants below, which sets the close of class certification discovery for September 24, 2021 followed by a class certification filing deadline of October 18, 2021, is unrealistic.  As Defendants acknowledge, there are legal and logistical barriers that will require additional time to depose Toyota Motor Corporation's ("TMC's") witnesses.  International travel is not currently feasible, and remote depositions are impermissible under the terms of the United States-Japan Consular Convention Protocol Treaty and Japanese law. It is outrageous for Defendants to press for an early certification deadline when TMC—a *party* to this action and the *manufacturer* of the Class Vehicles—cannot even be deposed.

Further, Defendants requested, and Plaintiff agreed, to allow TMC an additional 60-day extension on all written discovery (statutory time + 60 days), and to agree to reasonable extensions for TMS and TMNA on all written discovery, to allow for TMS

and TMNA to coordinate on responses that require input from TMC. Further, Defendants requested, and Plaintiff agreed, to provide a 90-day written notice period before scheduling any TMC deposition, and a 30-day notice before scheduling any TMS/TMNA deposition. Further, Defendants requested, and Plaintiff agreed, not to serve discovery on TMS or TMNA that Plaintiff's counsel know reasonably require the input of TMC, in order to circumvent the agreed extension on all discovery for TMC.

Further, the parties agree that discovery should be coordinated in the four related cases, and in two of the actions, *Murphy* and *Peguero, supra*, Toyota intends to file additional Motions to Dismiss on February 5 and February 12, 2021, respectively, with hearing dates of April 26, 2021.

Based on the above, Plaintiff does not believe it is realistic to complete all discovery needed for their Motion for Class Certification by September 24, 2021 or to file their Motion for Class Certification by October 18, 2021.

Instead, in light of Defendants' requested discovery extensions and the prohibition on remote depositions in Japan, Plaintiff proposes that the parties begin discovery now and that the court reconvene a status conference to discuss the schedule for discovery and Plaintiff's Motion for Class Certification in or around June 2021, by which time Defendants' upcoming Motions to Dismiss in *Murphy* and *Peguero* will have been decided, and by which time the parties will have a better understanding of the timing of discovery in light of the limitations discussed *supra*.

**B.    Defendants' Statement**

Defendants propose that the Court set a schedule through Plaintiff's anticipated motion for class certification.  A decision on that motion will inform whether (and to what extent) these matters proceed.  Following a decision on class certification, Defendants propose that the Court convene a status conference to discuss any additional discovery, including discovery related to the merits, experts, and damages.  The parties

will make proposals to the Court regarding the schedule for dispositive motions, pretrial conferences, and trial at that stage.

There is no reason to defer any schedule, as Plaintiffs' counsel propose. Defendants propose the following schedule for this matter. If it is necessary to extend these deadlines due to COVID-19 or the other issues that Plaintiffs' counsel identify, the parties may work together. But any extensions should be based on a showing of good cause. Deadlines focus the parties' efforts in litigation, and they are particularly important here to ensure the efficient prosecution of this case. Nor is it "outrageous" to require Plaintiffs to make a showing of need for a deposition of TMC before the parties have even commenced discovery. To be clear, Defendants have not taken the position that they will not provide such a deposition; only that Plaintiffs should be held to their burden of showing that such a deposition is both relevant and proportionate to the needs of the case at the class certification stage.

Attached is Exhibit A with the parties' respective proposals, but Defendants respectfully request that the Court set the following class certification deadlines, including an early mediation deadline.

| Matter | Defendants' Proposal |
|---|---|
| Deadline for initial disclosures | March 1, 2021 |
| Deadline to join other parties or amend the pleadings pursuant to Fed. R. Civ. P. 16(b)(3)(A).[7] | March 1, 2021 |
| Deadline for Plaintiffs to designate the names, curriculum vitae and subject areas of expected testimony for all experts in support of motion for class certification pursuant to Fed. R. Civ. P. | August 6, 2021 |

---

[7] As discussed above, this deadline does not impact Plaintiffs' counsel's ability to seek amendment pursuant to Rule 15. (*See supra* p. 14.)

| Matter | Defendants' Proposal |
|---|---|
| 26(a)(2)(A) | |
| Deadline for Defendants to designate the names, curriculum vitae and subject areas of expected testimony for all experts in opposition to motion for class certification pursuant to Fed. R. Civ. P. 26(a)(2)(A) | September 3, 2021 |
| Deadline for Plaintiffs to disclose the names, curriculum vitae, and subject areas of expected testimony for all experts to rebut Defendants' experts (only if necessary) | September 17, 2021 |
| Deadline to Complete Class Certification Discovery | September 24, 2021 |
| Deadline for Defendants to file Motion for Summary Judgment against Plaintiffs, and all supporting declarations and evidence | October 18, 2021 |
| Deadline for Plaintiffs to file Motion for Class Certification and all supporting declarations, evidence, and other papers | October 18, 2021 |
| Deadline for Plaintiffs to file Opposition to Defendants' Motion for Summary Judgment, and all supporting declarations and evidence | December 20, 2021 |
| Deadline for Defendants to file Opposition to Plaintiffs' Motion for Class Certification and all supporting declarations, evidence, and other papers | December 20, 2021 |

| Matter | Defendants' Proposal |
|--------|---------------------|
| Deadline to conduct initial ADR session with private mediator. | January 14, 2022 |
| Deadline for Defendants to file Reply in Support of Motion for Summary Judgment | January 24, 2022 |
| Deadline for Plaintiffs to file Reply in Support of Motion for Class Certification | January 24, 2022 |
| Hearing on Motion for Class Certification | February 21, 2022, 2:00 p.m., subject to the Court's calendar |

## XII.   TRIAL

The parties reserve all rights to a jury trial.  Although it is difficult to accurately determine the length of trial at this stage, the parties estimate trial could last 10–15 days, depending on the number of remaining issues at that point.  As discussed above, the parties propose that the Court defer setting any trial date until after a decision on class certification.

Dated:  February 1, 2021                    Respectfully submitted,

**GREENSTONE LAW APC**

By: */s/ Mark S. Greenstone*
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
Email: mgreenstone@greenstonelaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CAPSTONE LAW APC**
Steven R. Weinmann (SBN 190956)
Tarek H. Zohdy (SBN 247775)
Cody R. Padgett (SBN 275553)
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396
Email: Steven.Weinmann@capstonelawyers.com
Email: Tarek.Zohdy@capstonelawyers.com
Email: Cody.Padgett@capstonelawyers.com

**BERGER MONTAGUE P.C.**
Russell D. Paul (*Pro Hac Vice*)
Amey J. Park (*Pro Hac Vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
Email: rpaul@bm.net

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (SBN 134180)
Marc L. Godino (SBN 182689)
Danielle L. Manning (SBN 313272)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff*

Dated: February 1, 2021

**GIBSON, DUNN & CRUTCHER LLP**

By: /s/ *Christopher Chorba*
Christopher Chorba
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: cchorba@gibsondunn.com
Email: aharris@gibsondunn.com

*Attorneys for Defendants*

**ATTESTATION OF FILER**

I, Mark S. Greenstone, am the ECF user whose identification and password are being used to file this document. I hereby attest that concurrence in the filing of this document has been obtained from each of the other Signatories, which shall serve in lieu of their signatures on the document. Signed this 1st day of February, 2021.

/s/ *Mark S. Greenstone*
Mark S. Greenstone

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.   On February 1, 2021, I served true and correct copies of the following document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on February 1, 2021, at Los Angeles, California.

*s/ Mark S. Greenstone*
Mark S. Greenstone